886 P.2d 1354

STATE of Arizona, Appellee,

v.

Arthur Martin ROSS, Appellant.

No. CR–91–0133–AP.

Supreme Court of Arizona,
En Banc.

Dec. 22, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section and Linda L. Knowles, Asst. Atty. Gen., Phoenix, for the State.

Harriette P. Levitt, Tucson, for Arthur Martin Ross.

## OPINION

MARTONE, Justice.

Arthur Martin Ross was found guilty of premeditated first degree murder and armed robbery. He was sentenced to death for the murder and life imprisonment for the armed robbery. He appeals to this court. *See* Rules 26.15 and 31.2(b), Ariz.R.Crim.P.; A.R.S. § 13–4031. We affirm the convictions and sentences.

## I. *BACKGROUND*

During the morning of April 10, 1990, Ross contacted Mac Moore, a real estate agent. Ross identified himself as Michael Davis, and expressed an interest in looking at residential property. Ross and his 14–year–old son Jason went to Moore's office and arranged to see three houses. Although clients normally ride with the agent to tour property, Ross insisted on driving separately. All three houses were supposed to be vacant but were not. Ross looked at the first two but not the third. The group returned to the first house where cleaners were working on the main floor. Ross, his son, and Moore went to the basement. As Ross and Jason began to discuss what could be heard between the basement ceiling and the main floor, they heard noise from the workers above. Ross quickly ended the tour, saying he was late for another appointment.

That other appointment was to see James Ruble. Earlier in the morning, Ross had seen a "For Lease" sign in a vacant store at a Tucson shopping center and called the listed real estate agency. Identifying himself as Michael Davis, Ross feigned interest in leasing space for a photographic design business. Ross's call was taken by Ruble, a real estate agent, who scheduled a viewing for 2:00 that afternoon.

At 2:00 p.m., Ross, armed with a nine millimeter handgun, met Ruble at the vacant store. Once inside, Ross attempted to take Ruble's wallet. During a struggle, Ross shot Ruble at close range in the head. He dragged the body behind a counter and shot Ruble again in the head. Ruble died from these wounds.

Ross left with Ruble's wallet and immediately used Ruble's credit and bank cards. He got a temporary driver's license under Ruble's name. During the next four days, Ross made cash withdrawals in Tucson and Casa Grande using Ruble's ATM card. In Casa Grande, he purchased a car by identifying himself as "James Ruble" and by showing Ruble's Visa card.

On April 14, 1990, police arrested Ross in Casa Grande. He claimed to be James Ruble and had Ruble's wallet with him. Ross was taken to the Casa Grande police station. After police gave him his *Miranda* warnings, Ross said he understood his rights, waived them, and agreed to talk. Detective Cox and then Sergeant Petropoulis questioned him. Ross lied about his identity, using the name Robert Burgess, and said that he had found the wallet in a garbage dumpster. Ultimately, however, he confessed that he had set up an appointment with Ruble and intended to steal his identification and money. Ross claimed that there was a struggle, that the first shot was accidental, and that the second shot was deliberate because he was scared.

At trial, Ross moved to suppress his confession. After an evidentiary hearing, the trial court denied the motion, finding "that when [the defendant] gave his statement to the detectives, the defendant knew what he was doing, that the statements were voluntary, and they were not the product of an overborne will resulting from police promises, threats or coercions." Tr., Jan. 30, 1991, at 3.

In addition to the confession, other physical evidence linked Ross to the murder. Bank photographs showed Ross and his son using Ruble's ATM card. Ross's fingerprints were at the murder scene. The weapon found in Ross's car was the same one that had fired the fatal bullets.

The jury unanimously found Ross guilty of premeditated murder. At sentencing, the court returned a special verdict finding no mitigating factors and two aggravating factors (murder for pecuniary gain and murder committed in an especially heinous or depraved manner). The court sentenced Ross to death for first degree murder and to life imprisonment for armed robbery.

## II. *ISSUES*

We will address the following issues raised in Ross's brief:

### A. *Trial Issues*

1. Did the trial court err by denying defendant's motions to suppress his confession?

2. Was Ross denied his right to effective assistance of counsel as a matter of law?

### B. *Sentencing Issues*

1. Did the trial court err in finding the aggravating factor of heinousness or depravity?

2. Did the trial court err in finding that there were no mitigating factors or that those factors were not substantial enough to call for leniency?

### C. *Other Issues*

Ross also makes the following claims of error, all of which are meritless and do not warrant separate discussion:

■ 1. The state may not seek the death penalty because the police implied leniency during Ross's interrogation. No cases support this theory. Moreover, as we discuss *infra* at 602–604, 886 P.2d at 1358–1360 in connection with the voluntariness of the confession, there is no evidence that Petropoulis promised leniency.

2. The trial court was prejudiced by Ruble's family's comments and recommendations in the presentence victim impact report

and during the sentencing hearing. Ross offered no proof of prejudice to support this contention; it therefore fails. *State v. Hinchey,* 165 Ariz. 432, 440, 799 P.2d 352, 360 (1990) (absent contrary proof, trial judge presumed to evaluate only relevant sentencing factors or to set aside the irrelevant, inflammatory, and emotional), *cert. denied,* 499 U.S. 963, 111 S.Ct. 1589, 113 L.Ed.2d 653 (1991).

3. This court should conduct a proportionality review of the death sentence, which Ross says is disproportionately severe. This court no longer conducts such reviews. *State v. Salazar,* 173 Ariz. 399, 417, 844 P.2d 566, 584 (1992) (proportionality reviews discontinued in death penalty cases), *cert. denied,* —— U.S. ——, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993).

■ 4. Execution by lethal gas constitutes cruel and unusual punishment. This argument is moot because Ross now has the option of execution by lethal intravenous injection. *See* A.R.S. § 13–704(B).

5. The death penalty is unconstitutional and violates international law because:

(a) Arizona's statute fails to narrow the class of persons eligible for the death penalty. We have rejected that argument. *State v. Greenway,* 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991) ("Arizona's death penalty statute narrowly defines the class of death-eligible persons.").

(b) International standards make imposition of the death penalty for civilian crimes inappropriate. American law is to the contrary. *See Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (death penalty not inherently cruel and unusual punishment); *State v. Richmond,* 136 Ariz. 312, 322, 666 P.2d 57, 67 (unnecessary to address claim that Arizona's death penalty violates international law), *cert. denied,* 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983).

## III. *ANALYSIS*

### A. *Trial Issues*

#### 1. *Voluntariness of the Confession*

Ross contends that the police used interrogation and psychological tactics to overcome

his will. He claims that the totality of circumstances shows his confession was coerced.

■ Because confessions are presumed to be involuntary, the state must prove a confession is voluntary and not the result of psychological or physical coercion. *State v. Amaya–Ruiz,* 166 Ariz. 152, 164, 800 P.2d 1260, 1272 (1990), *cert. denied,* 500 U.S. 929, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991). In evaluating voluntariness, the court must examine the totality of the circumstances surrounding a confession. A.R.S. § 13–3988(B); *State v. LaGrand,* 153 Ariz. 21, 26, 734 P.2d 563, 568, *cert. denied,* 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987). At the suppression hearing, the trial court evaluated the evidence, including the testimony of Detective Cox and Sergeant Petropoulis, and found that Ross's confession was voluntary. Absent clear and manifest error, we. will not disturb the trial court's ruling. *State v. Tapia,* 159 Ariz. 284, 288, 767 P.2d 5, 9 (1988).

■ The interrogation environment does not suggest police intimidation or coercion. Upon arrest, the officers advised Ross of his *Miranda* rights. Ross, convicted nine times before, knowingly and willingly waived his rights. The police removed Ross's handcuffs before he entered the interrogation room and repeated his *Miranda* rights once inside. The interrogation lasted a reasonable time— one hour and thirty-five minutes. *See State v. Stanley,* 167 Ariz. 519, 524, 809 P.2d 944, 949 (one-and-a-half hour to two-hour interview not extraordinary), *cert. denied,* 502 U.S. 1014, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991). Detective Cox even called for a twenty minute break after the first hour to get Ross a cigarette.

■ Ross argues that the discussion of his son prompted his confession. In evaluating this argument we look to whether the defendant agreed to talk after *Miranda* warnings, whether the defendant initiated the discussion, and whether the police dealt honestly with him. *State v. Ferguson,* 119 Ariz. 55, 60, 579 P.2d 559, 564 (1978). Police may discuss a relative's criminal liability if they have reasonable grounds to do so. *Id.*

■ Here, Ross agreed to talk after *Miranda* warnings. He was the first to mention that Jason was a relative, first claiming Jason was his nephew, then admitting Jason was his son. Moreover, after Ross referred to Jason, the police properly asked him about Jason's identity and whereabouts. Jason was pictured in the ATM photographs and was a possible suspect, or, at the very least, was someone the police might want to question. Ross asked whether Jason could return to his mother just before he confessed. Sergeant Petropoulis told him truthfully that Jason could return to his mother "unless he killed [Ruble]." Ex. C, Voluntariness Hr'g., Tr., Jan. 29, 1991, at 41. A confession is not inadmissible when police "only point out the obvious fact that if the guilty person is found it will be unnecessary to hold others." *Ferguson,* 119 Ariz. at 60, 579 P.2d at 564. Ross's argument that the confession was induced by the discussion of Jason is without merit.

■ Ross argues that Sergeant Petropoulis implied leniency if Ross confessed to felony murder. A voluntary confession is one not induced by a direct or implied promise, however slight. *State v. Ferguson,* 149 Ariz. 200, 207, 717 P.2d 879, 886 (1986) (*Ferguson II* ). A confession resulting from a promise is involuntary if (1) police make an express or implied promise and (2) the defendant relies on the promise in confessing. *Amaya–Ruiz,* 166 Ariz. at 165, 800 P.2d at 1273. Advice to tell the truth, unaccompanied by either a threat or promise, does not make a confession involuntary. *Id.*

Sergeant Petropoulis made no express or implied promise of leniency. Instead, he realistically said that the state could go to court to prove an intentional murder. He neither said nor hinted that felony murder would reduce Ross's sentence. He advised Ross to tell the truth. Moreover, nothing in the record suggests that Ross relied upon Petropoulis's words or even thought he would have

a chance at a lighter sentence. In fact, the record suggests the contrary. In discussing whether the killing was accidental, Ross himself said "[b]ut either way I'm goin' to the electric chair or whatever you have here because he's dead." Ex. C, Voluntariness Hr'g, Tr., Jan. 29, 1991, at 42. Ross believed that he could be sentenced to death on either a felony murder theory or a premeditated murder theory. Instead of coercion, we see only intelligent, effective, and permissible police interrogation techniques.

In *Ferguson II*, we declared the defendant's confession voluntary even though Sergeant Petropoulis engaged in similar techniques. We held that such police tactics did not constitute an implied promise of leniency and showed no improper influence. As another detective said in that case, interview techniques are necessary to start a conversation with a defendant and provide "some sort of way out where they are able to talk to [the police]." *Ferguson II*, 149 Ariz. at 207, 717 P.2d at 886.

After a comprehensive examination of the totality of the circumstances surrounding Ross's confession, we hold that it was voluntary and properly admitted.

■ But even if it were otherwise, we hold that its admission would have been harmless error. *Sullivan v. Louisiana,* — U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *State v. Bible*, 175 Ariz. 549, 858 P.2d 1152 (1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994). "Error, be it constitutional or otherwise, is harmless if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *Bible*, 175 Ariz. at 588, 858 P.2d at 1191. Even without Ross's confession, the physical and circumstantial evidence overwhelmingly supports his conviction. Ross's fingerprints were found at the murder site. Ross represented himself to be James Ruble and bought a car using Ruble's name and credit cards. Bank surveillance cameras repeatedly captured Ross using Ruble's ATM

card. When arrested, Ross had Ruble's wallet. The weapon found in his car fired the fatal bullets. If there was error, we can say that the "guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Sullivan,* — U.S. at ——, 113 S.Ct. at 2081 (emphasis in original).

### 2. *Ineffective assistance of counsel*

■ Ross asks the court to modify the general rule that ineffective assistance of counsel claims should be raised in post-conviction relief proceedings under Rule 32, Ariz.R.Crim.P., unless the record clearly shows that the claim is meritless. *State v. Atwood*, 171 Ariz. 576, 599, 832 P.2d 593, 616 (1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). He contends that the court should expand its review to ineffectiveness *per se* claims—those clearly evidenced in the record. He argues that a defendant must proceed under Rule 32 only when one must go beyond the record to support an ineffectiveness claim. This case affords us no occasion to reconsider our practice.

■ Ross alleges that counsel's admission during trial that he was guilty of felony murder, and his advice that Ross should not cooperate with the presentence investigation, constituted ineffective assistance of counsel. Counsel's presentencing advice and the decision to admit guilt may be strategically reasonable under the circumstances. *See id.* 171 Ariz. at 600, 832 P.2d at 617 (wide latitude given to tactical choices of counsel). Because these claims would require evidence beyond the record and are not patently meritless, Ross must proceed under Rule 32.

### B. *Sentencing Issues*

■ The decision to sentence a person to death depends on the existence and weighing of aggravating and mitigating circumstances. The state must prove beyond a reasonable doubt the existence of aggravating circumstances contained in A.R.S. § 13–703(F). A.R.S. § 13–703(C); *State v. Mi-*

*chael Apelt,* 176 Ariz. 349, 367, 861 P.2d 634, 652 (1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 113, 130 L.Ed.2d 59 (1994). The defendant must prove by a preponderance of the evidence a statutory or non-statutory mitigating circumstance. *Apelt,* 176 Ariz. at 367, 861 P.2d at 652. If the trial court finds one or more aggravating circumstances and no mitigating circumstances sufficient to call for leniency, it must sentence the defendant to death. A.R.S. § 13–703(E). We conduct an independent examination of aggravating and mitigating circumstances to assess the propriety of a death sentence. *Apelt,* 176 Ariz. at 367, 861 P.2d at 652.

### 1. *Aggravating Circumstances*

■ The trial court found that Ross murdered for pecuniary gain under A.R.S. § 13–703(F)(5). Ross's admitted objective was to steal money and identification. He was unable to complete that objective when he was with Mac Moore. He ultimately completed it at the expense of Mr. Ruble. It is irrelevant to our inquiry whether Ross intended to kill before the robbery. *State v. Fierro,* 166 Ariz. 539, 551, 804 P.2d 72, 84 (1990). "When the defendant kills to facilitate his escape and to permit him to take and keep stolen items, he furthers his pecuniary gain motive." *Id.* The evidence clearly shows that Ross killed Ruble to steal and keep his credit and bank cards to make fraudulent purchases and withdrawals. The state has proved the pecuniary gain aggravating circumstance beyond a reasonable doubt.

■ Whether the murder was committed in an "especially heinous, cruel or depraved manner" within the meaning of A.R.S. § 13–703(F)(6) is more problematic. Heinousness and depravity refer to a defendant's vile state of mind and attitude at the time of the murder, as evidenced by his conduct. *State v. Gretzler,* 135 Ariz. 42, 51, 659 P.2d 1, 10, *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). In *Gretzler,* we identified five factors that point to heinousness or depravity: (1) relishment of the murder, (2) infliction of gratuitous vio-

lence, (3) mutilation of the victim, (4) senselessness of the crime, and (5) helplessness of the victim. *Id.* We have also held that elimination of a witness as a motive for murder can be a factor in showing heinousness or depravity. *See, e.g., State v. King,* 180 Ariz. 268, 883 P.2d 1024 (1994).

The trial court found heinousness and depravity because the murder was senseless, the victim was helpless, and the only reasonable motive for killing Ruble was to eliminate him as a witness.

■ Ross challenges these findings on three grounds. First, he contends that the murder was not senseless because Ruble fought back when he attempted to rob him. Thus, he had to shoot him to complete the robbery. We disagree. A murder is senseless when it is unnecessary to allow the defendant to complete his objective. *State v. Comer,* 165 Ariz. 413, 429, 799 P.2d 333, 349 (1990) (murder senseless because it was unnecessary to accomplish defendant's goal of obtaining money and supplies, not that it was committed without purpose), *cert. denied,* 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 460 (1991); *State v. Milke,* 177 Ariz. 118, 124–25, 865 P.2d 779, 785–86 (1993) (defendant's murder of her child unnecessary to achieve goal of freeing her from parental burdens; other options existed), *cert. denied,* —— U.S. ——, 114 S.Ct. 2726, 129 L.Ed.2d 849 (1994). Killing Ruble in order to take his wallet fits this definition of senseless. Ross already had Ruble's wallet before the second shot. He did not need to shoot again to complete the robbery. Ross could have taken Ruble's wallet without killing him.

■ Second, Ross argues that Ruble was not helpless because he still could have thwarted the robbery after being shot the first time. Ross adds that Ruble was a young, robust man, not an inherently frail, helpless victim. Although Ruble may have been robust immediately before the first shot, he certainly was not immediately before the second. In a similar case we held that the victim was helpless when, after having

been shot, he fell and was disabled, and the defendant could have escaped without shooting him again. *State v. Chaney,* 141 Ariz. 295, 312–13, 686 P.2d 1265, 1282–83 (1984). *See also State v. Rossi,* 146 Ariz. 359, 365–66, 706 P.2d 371, 377–78 (1985) (after being shot, 66–year–old victim was helpless; he could not thwart the robbery and defendant easily could have escaped without firing fatal shot). In this case, after the first shot, the victim fell face down. There is no evidence of a struggle after the victim went down. The shot obviously impaired Ruble's ability to resist the robbery. Ross easily could have escaped. When shot a second time, Ruble was helpless.

Third, Ross argues that there is either no evidence, or insufficient evidence, to support a finding that he murdered Ruble to eliminate him as a witness.

■ A murder committed for the purpose of eliminating a witness has long been recognized as the kind of evidence that can support a finding of heinousness or depravity. *King,* 180 Ariz. at 286, 883 P.2d at 1042; *Greenway,* 170 Ariz. at 167, 823 P.2d at 34; *Stanley,* 167 Ariz. at 528, 809 P.2d at 953; *State v. Correll,* 148 Ariz. 468, 481, 715 P.2d 721, 734 (1986); *State v. Gillies,* 142 Ariz. 564, 570, 691 P.2d 655, 661 (1984), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985); *State v. Smith,* 141 Ariz. 510, 511–12, 687 P.2d 1265, 1266–67 (1984).

That the victim has been murdered does not always mean that there has been witness elimination. Otherwise, this factor would be present in every murder. Too often, claims of witness elimination are made with no evidence to back them up.

To be proper evidence of heinousness or depravity, witness elimination must be proved beyond a reasonable doubt. The evidence supporting a finding of witness elimination has, under our cases, taken one of three forms. First is where the murder victim is a witness to some other crime, and is killed to prevent that person from testifying about the other crime. *See* Mark Curri-

den, *Witness Threats a Problem,* A.B.A.J., Nov. 1994, at 18 (discussing problem of gang-sponsored murders of witnesses to unrelated gang activities). *See also King,* 180 Ariz. at 290, 883 P.2d at 1046 (Moeller, V.C.J., Specially Concurring) (example of witness elimination "the murder of a government witness arranged by gangs or organized crime under circumstances not falling within the aggravating pecuniary value provisions of § 13–703(F)(4) or (5).").

A second kind of evidence of witness elimination is a statement by the defendant that witness elimination is a motive for the murder. *Greenway,* 170 Ariz. at 167, 823 P.2d at 34 (defendant told coworker and cellmate that he killed victims because they had "seen [defendant's] face"); *Smith,* 141 Ariz. at 511–12, 687 P.2d at 1266–67 (defendant told cellmate he killed victim so victim could not testify against him); *State v. Gillies,* 135 Ariz. 500, 512, 662 P.2d 1007, 1019 (defendant's "own confessions demonstrate that the purpose of the murder was to eliminate the victim as a witness to her own rape").

The final kind of evidence is where extraordinary circumstances of the crime show, beyond a reasonable doubt, that witness elimination is a motive. This will only occur in the most extreme case. Indeed, we find only one example in our prior cases. In *Correll,* 148 Ariz. at 471–72, 715 P.2d at 724–25, defendant entered a mobile home, bound and gagged the two occupants, and went from room to room looking for valuables. Two more people arrived during the robbery, and defendant bound and gagged them. Defendant put three of the victims in his car. He drove them to the desert, forced them to lie face down, and then shot each of them. One of them survived. The defendant then returned to the mobile home and killed the remaining victim. The court properly found witness elimination on those outrageous facts.

■ The evidence here does not fit into any of these three categories. The victim was not a witness to some unrelated crime. Ross said nothing to suggest witness elimina-

tion was a motive. There are some facts here that suggest witness elimination may have been a motive for the murder, but they are not so extraordinary that we can make that determination beyond a reasonable doubt. A finding of witness elimination is therefore inappropriate.

■ We are left, then, with senselessness and helplessness. We have said that senselessness and helplessness will ordinarily not be sufficient to prove heinousness or depravity. *See State v. Runningeagle,* 176 Ariz. 59, 65, 859 P.2d 169, 175, *cert. denied,* —— U.S. ——, 114 S.Ct. 609, 126 L.Ed.2d 574 (1993); *State v. Smith,* 146 Ariz. 491, 503, 707 P.2d 289, 301 (senselessness and helplessness, without other factors, "ordinarily [not] determinative on the question of heinousness or depravity"). We hold that they are not enough here to prove the murder was heinous or depraved beyond a reasonable doubt.

### 2. *Mitigating Circumstances*

In mitigation, Ross presented (1) a childhood background of emotionally and physically abusive foster homes and sexual abuse, (2) his prison record of educating himself, tutoring others, and attending counseling, (3) his cooperation with police, (4) a lack of any prior record of violence, and (5) current family support.

The trial court stated that it had considered all of the mitigating circumstances in A.R.S. § 13–703(G), as well as all other testimony offered by the defendant in mitigation. It found that Ross failed to establish by a preponderance of the evidence any statutory or nonstatutory mitigating factors, or that they were insufficient to call for leniency.

Ross challenges these findings, arguing that because the state did not refute the nonstatutory mitigating evidence, he proved the nonstatutory mitigating factors by a preponderance of the evidence. He then argues that because these factors were uncontroverted, the trial court erred by using "or" in its finding that the defendant failed to show any mitigating factors by a preponderance of

the evidence *or* that they were not sufficiently substantial to call for leniency.

Our independent examination of the record makes discussion of this issue unnecessary. We agree with the trial court's finding that Ross failed to prove any mitigating factors calling for leniency.

■ A difficult family background is not a relevant mitigating circumstance unless "a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant's control." *State v. Wallace,* 160 Ariz. 424, 427, 773 P.2d 983, 986 (1989), *cert. denied,* 494 U.S. 1047, 110 S.Ct. 1513, 108 L.Ed.2d 649 (1990). There is no indication here that Ross was unable to control his actions because of a difficult childhood. Defendant's background therefore is not a mitigating circumstance.

■ Ross claims that his previous good behavior while incarcerated should be a mitigating factor. Before sentencing in this case, Ross had been convicted of crimes on *nine* earlier occasions and sentenced to prison *five* separate times. Two of those convictions were for promoting prison contraband and aggravated escape. He also has a history of committing crimes while on parole. Indeed, Ross was on parole when he killed Ruble. Ross's claim that he was a model prisoner is hollow and is not a proper mitigating circumstance.

■ We have previously held that cooperation is in the best interest of the accused and is not a mitigating circumstance. *Apelt,* 176 Ariz. at 368, 861 P.2d at 653. Ross was not cooperative with the police. He fed Detective Cox and Sergeant Petropoulis a steady stream of lies about his identity and the circumstances surrounding Ruble's death before finally confessing. There was no cooperation here. *Amaya–Ruiz,* 166 Ariz. at 179, 800 P.2d at 1287 (1990) (no cooperation with police when, among other things, defendant denied committing crime when first questioned).

We hold that Ross's final two claimed mitigating circumstances are not sufficient to call for leniency. Ross has not been previously convicted of any crimes involving violence, but his previous criminal record includes convictions for first degree burglary and aggravated escape. Although a previous conviction for a serious offense (the definition of which includes several violent offenses) is an aggravating factor, A.R.S. § 13–703(F)(2), we do not believe that the absence of such convictions is necessarily a mitigating factor. Finally, although familial support can be a mitigating circumstance, "it does not require a finding of mitigation sufficient to call for leniency." *Bible*, 175 Ariz. at 606, 858 P.2d at 1209.

### 3. *Reweighing*

Since we have invalidated one of the two aggravating circumstances supporting Ross's death sentence, we must decide whether to remand for resentencing or affirm the sentence on our own reweighing of aggravating and mitigating circumstances. *Bible*, 175 Ariz. at 606–09, 858 P.2d at 1209–12. We held in *Bible* that a remand is required only when "the trial judge has erred in the sentencing process and there is mitigating evidence of more than de minimis weight...." *Id.* at 609, 858 P.2d at 1212. Here, there was no mitigating evidence of more than de minimis weight. On independent reweighing of the evidence, we affirm the death sentence. *Richmond v. Lewis,* — U.S. —, —, 113 S.Ct. 528, 537, 121 L.Ed.2d 411 (1992).

### IV. *DISPOSITION*

After examining the record, we find no fundamental error. A.R.S. § 13–4035. We therefore affirm Ross's convictions and sentences.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.