**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RICHARD HARLEY GREENWAY,
*Petitioner-Appellant*,

v.

CHARLES L. RYAN, Director of
Arizona Department of Corrections,
*Respondent-Appellee.*

No. 14-15309

D.C. No.
4:98-cv-00025-
RCC

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, Chief Judge, Presiding

Argued and Submitted June 21, 2017
San Francisco, California

Filed August 8, 2017

Before: Mary M. Schroeder, Johnnie B. Rawlinson,
and Carlos T. Bea, Circuit Judges.

Per Curiam Opinion

## SUMMARY[*]

### Habeas Corpus / Death Penalty

The panel affirmed the district court in an Arizona state prisoner's appeal arising from his habeas corpus petition challenging his 1989 conviction and death sentence for the killing of a mother and daughter.

After considering supplemental briefing regarding the impact on this case of *McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc), the panel held that neither the Arizona Supreme Court nor the trial court applied an impermissible causal-nexus test to exclude mitigating evidence.

### COUNSEL

Therese M. Day (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Phoenix, Arizona; for Petitioner-Appellant.

Laura P. Chiasson (argued), Assistant Attorney General; Jeffrey A. Zick and Lacey Stover Gard, Chief Counsel; Mark Brnovich, Attorney General; Office of the Attorney General, Tucson, Arizona; for Respondent-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

PER CURIAM:

We continue to consider issues raised in Richard Greenway's first habeas petition challenging his 1989 conviction and death sentence for the brutal execution-style killing of a mother and daughter in 1988. In our first opinion, we affirmed the denial of relief on many claims, but remanded others. *See generally Greenway v. Schriro*, 653 F.3d 790 (9th Cir. 2011).

Included among the claims we denied was the contention that the state trial court and the state supreme court, by failing to consider all mitigating circumstances, had violated the United States Supreme Court's teachings in *Lockett v. Ohio*, 438 U.S. 586 (1978) and *Eddings v. Oklahoma*, 455 U.S. 104 (1982). Greenway argued that the Arizona Supreme Court limited consideration of mitigating factors to those causally linked to the commission of the crime. Relying on our court's prior decision in *Schad v. Ryan*, 606 F.3d 1022 (9th Cir. 2010), we rejected the claim on the ground that the Arizona Supreme Court's opinion contained no indication that such a test had been applied. *Greenway*, 653 F.3d at 807–08 (citing *State v. Greenway*, 170 Ariz. 155, 168–71 (1991) (in banc)).

While Greenway's other claims remained under consideration in the federal courts, our court, in an en banc decision, overruled *Schad* and any presumption it may have suggested that the Arizona Supreme Court had followed the United States Supreme Court's decisions in *Lockett* and *Eddings* and had not applied a causal-nexus test. *McKinney v. Ryan*, 813 F.3d 798, 818–19 (9th Cir. 2015) (en banc).

Rather, *McKinney* held that no "clear indication" of the application of the causal-nexus test was required because the Arizona courts had "consistently," during the period between 1989 and 2005, applied the wrong test. *Id.* at 815–26 ("The 'clear indication' rule . . . is an inappropriate and unnecessary gloss on the deference already required under [28 U.S.C.] § 2254(d)."). In other words, if there is to be a presumption, it is that the Arizona Supreme Court violated the dictates of *Lockett* and *Eddings* during that period.

We stayed proceedings in this appeal pending *McKinney*'s becoming final. When the Supreme Court denied certiorari, *Ryan v. McKinney*, 137 S. Ct. 39 (2016), we asked for supplemental briefing on *McKinney*'s impact on this case.

The parties appear to be in fundamental agreement that *McKinney* requires us to reexamine the state trial and appellate courts' decisions to determine whether or not all mitigating factors were considered. The parties disagree, of course, on what the state courts did in petitioner's case, with Greenway contending a causal-nexus test was used and the state contending it was not.

First, however, we consider Greenway's threshhold contention that it is not for us to determine what the state courts did, because our en banc court in *McKinney* has already ruled they applied the wrong test. We said in *McKinney* that the Arizona courts had "consistently" applied the causal-nexus test. 813 F.3d at 803. We did not say, however, that Arizona had always applied it. Notably, in listing the cases in which the causal-nexus test was erroneously applied by the state courts, the *McKinney* majority opinion did not include Greenway's case.

*McKinney*, *Id.* at 815–16, 824–26. And in *McKinney*, our holding resolved only the "precise question" whether the state court had applied the causal-nexus test in that specific case. *Id.* at 804. We therefore must examine the state court decisions in Greenway's case to determine whether they took into account all mitigating factors.

Those decisions came in the context of a criminal prosecution for a double murder, *see Greenway*, 653 F.3d at 793, and the underlying circumstances of the crime have relevance to our understanding of how the state courts handled mitigating circumstances. We summarize the facts from our first opinion:

> On March 28, 1988, Pima County Sheriffs found a burned 1983 Porsche, which officials determined belonged to Frank and Lili Champagne. A deputy went to inform the Champagnes at their home and discovered the bodies of Lili Champagne and her daughter, Mindy Peters. Lili had been shot once behind the knee and once between the eyes. Mindy had been shot twice, once in the jaw and once behind the ear. . . . [D]etectives picked up Greenway at his sister's house, [and] Greenway told detectives that he had met a man named "Red" at a 7–Eleven convenience store, and that Red had given both Greenway and his co-defendant, Chris Lincoln, a ride in a white Porsche. . . . Lincoln confessed to stealing and burning the Porsche, and he implicated Greenway. During further questioning, Lincoln confessed to participating in the killings and again

implicated Greenway. Greenway and Lincoln were then both arrested and charged with several counts, including the murders of Lili and Mindy. . . . Further investigation revealed that Greenway had attempted to sell the victims' car stereo to Brian Mize, Greenway's co-worker. According to Mize's trial testimony, Greenway told Mize that Greenway went to the victims' house and after taking "some stuff" from the house, Greenway sent his co-defendant out and then shot the victims.

*Id.* at 794 (internal citations omitted).

We also provide in the margin the full text of the relevant Arizona Supreme Court discussion of aggravating and mitigating circumstances, as well as the state trial court's evaluation.[1]

---

[1] The relevant portion of the Arizona Supreme Court decision reads as follows:

(a) *Age*

Defendant presented one statutory mitigating factor, A.R.S. § 13-703(G)(5), age, and numerous nonstatutory mitigating factors. The trial court concluded that defendant's age, 19 at the time of the murders, was the only mitigating factor. We agree with the trial court.

(b) *Defendant's low I.Q.*

Defendant argues that because he has an I.Q. of 72, he "is not only immature and learning disabled, but is

genuinely mentally retarded." He also argues that "the effect of the retardation on . . . his ability to realize what he was doing has to be considered as a mitigating factor." We do not agree.

Defendant's own expert testified that defendant was borderline functional, and *not* mentally retarded. Moreover, the expert testified that a person with an I.Q. of 72 is fully capable of functioning in society and that defendant was capable of making judgments with limited impairment. Defendant's former work manager testified that defendant was a responsible person, that he had been picked for promotion because he had shown an ability to supervise other people and that he handled problems without any outbreak of irrational behavior. As we stated in *State v. Ceja*, 126 Ariz. 35, 40, 612 P.2d 491, 496 (1980), "[t]his is not the slow, dull, [retarded] individual with [a] significantly impaired mental capacity which counsel [seeks] to depict," but rather, an individual who planned two weeks in advance to rob the victims and carried out this plan.

We cannot accept defendant's argument that, because he was inept at committing this crime and lacked criminal sophistication, his sentence should be reduced. We have never held that, as part of the sentencing process, the court must look at the crime itself to determine if it was carried out with criminal sophistication. We agree with the trial court that, under the facts of this case, defendant's I.Q. of 72, which places him in a borderline functioning category, was neither significant enough to qualify as a mitigating factor, nor sufficiently substantial to call for leniency.

*Greenway*, 170 Ariz. at 168–69.

The Arizona Supreme Court's opinion, on its face, as we observed before, does not expressly exclude any mitigation evidence or claim on the ground that it lacked causal relationship to the commission of the crime. *See Greenway*, 170 Ariz. at 168–69. Greenway had argued his low I.Q. should be considered, in addition to his young age. While the Arizona Supreme Court ultimately agreed with the trial court that Greenway's age (nineteen) was the only mitigating factor, it did consider the evidence presented with respect to the low I.Q. The court took it into account as a possible mitigator and appeared to weigh its importance. "We agree with the trial court that . . . defendant's I.Q. . . . was neither

---

The trial court ruled, in relevant part, as follows:

> Now, after determining whether or not the State has proven beyond a reasonable doubt certain aggravating factors, the Court must then turn its direction to mitigating factors, not only those mitigating factors that are set forth in A.R.S. 13-1704(g), but any other mitigating factors that have been presented to the Court. Looking at A.R.S. 13-1704(g), the Court specifically finds there is a mitigating factor, and that is the age of the Defendant. At the time of the killings the Defendant was nineteen years old, only one year into adulthood. The Court has considered all other mitigating factors, those presented at the aggravation-mitigation hearing, and also those which have been submitted to the Court in the sentencing memorandum and any other matters of record. In looking at the mitigating factor of the age of the Defendant, the Court finds that the Defendant's actions, [and] evidence of brutality [] far outweigh[] his chronological, emotional and mental age, and the Court finds that there are no other mitigating factors sufficiently substantial to call for leniency.

[1] significant enough to qualify as a mitigating factor, nor [2] sufficiently substantial to call for leniency." *Id.* at 169.

The state supreme court not only took into account Greenway's argument, but all the evidence presented in the trial court. The court set forth the evidence Greenway had submitted, including that of his own expert and work experience. *Id.* The court excluded nothing.

Moreover, the state court, in considering all the evidence Greenway presented, even cited *Lockett* for the breadth of circumstances that should be considered. The court said that the trial court must consider, in addition to Arizona's statutory factors, "any aspect of the defendant's character or record and any circumstance of the offense relevant to determining whether a sentence less severe than death is appropriate." *Id.* (citing *Lockett*, 438 U.S. at 586).

The state supreme court thus rejected, on the merits, Greenway's claim that his low I.Q. was a mitigating factor, and it did so on the basis of the evidence in the record. *See id.* at 169. The court did not reject any mitigating factor, as a matter of law, on the theory that it was not related to the commission of the crime.

When we look to the language used in all of the state court opinions that *McKinney* did cite, we find very different language from that which the state supreme court used in this case. The *McKinney* court itself discussed the various impermissible causal-nexus approaches. 813 F.3d at 813–17, 824–26. A number of Arizona Supreme Court cases considered mitigating factors in terms of whether the defendant's condition caused him to lose control of his behavior at the time of the crime. For example, in *State v.*

*Wallace*, the Arizona Supreme Court stated that "[a] difficult family background is a relevant mitigating circumstance if a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant's control." 160 Ariz. 424, 427 (1989) (in banc); *see McKinney*, 813 F.3d at 813–14. The Arizona Supreme Court echoed its focus on control in *State v. Hoskins*, 199 Ariz. 127, 151–52 (2000) (en banc); *State v. Martinez*, 196 Ariz. 451, 465 (2000) (en banc); *State v. Towery*, 186 Ariz. 168, 189 (1996) (in banc) (giving little to no mitigating weight to a defendant's family background where the defendant "[did] not prove a loss of impulse control or explain what caused him to kill"); *State v. Jones*, 185 Ariz. 471, 490–92, (1996) (in banc); *State v. Bolton*, 182 Ariz. 290, 314 (1995) (in banc); and *State v. Ross*, 180 Ariz. 598, 607 (1994) (in banc). *See McKinney*, 813 F.3d at 814–17, 824.

At other times, the Arizona Supreme Court focused on whether the defendant's mental condition was "linked to his criminal behavior" or had "any effect on the crimes." *See e.g.*, *State v. Djerf*, 191 Ariz. 583, 598 (1998) (en banc). In the late 1990s and early 2000s, the Arizona Supreme Court began explicitly considering whether mitigating factors were *causally* linked or connected to the criminal conduct. *See State v. Canez*, 202 Ariz. 133, 164 (2002) (en banc) ("A defendant's difficult childhood is mitigating only where causally connected to his offense. . . . [A] tenuous, speculative nexus is insufficient to constitute significant mitigation."); *State v. Hoskins*, 199 Ariz. at 151. ("For our purposes on review, it is essential not only that a personality disorder be shown to exist but that it be causally linked to the crime at the time the crime is committed."); *State v. Sharp*, 193 Ariz. 414, 425 (1999) (en banc) ("Because Appellant failed to establish a causal connection between his

unfortunate childhood or his abuse of drugs and alcohol and his criminal actions, sympathy for those events does not justify allowing him to receive diminished punishment for this brutal murder."); *State v. Greene*, 192 Ariz. 431, 442 (1998) (en banc) ("While it is true that Greene killed to get money to buy drugs, this is not the sort of causal connection that would support a claim of mitigation."). *State v. Rienhardt*, 190 Ariz. 579, 592 (1997) (en banc) ("Since [the defendant] declined to present any evidence of a causal connection at his aggravation-mitigation hearing, we reject this mitigating factor."); *Jones*, 185 Ariz. at 490–92 (rejecting mitigating factors for lack of "causal connection"). And in McKinney's case, unlike here, the Arizona Supreme Court cited directly to the causal-nexus test, as articulated in *Ross*. *See McKinney*, 813 F.3d at 803 (citing *State v. McKinney*, 185 Ariz. 567, 587 (1996) (in banc) (citing *Ross*, 180 Ariz. at 607)). None of the formulations we enumerated in *McKinney* are present in the state court's *Greenway* decision.

The trial court in Greenway's case likewise considered all mitigating factors and did not exclude anything on the ground it lacked a causal nexus to the crime. The trial court expressly noted that it was required to "turn its direction" not only to statutory mitigating factors but also "any other mitigating factors that have been presented to the court." Applying this rule, the trial court "considered all other mitigating factors," and found only one, Greenway's age, deserving of any weight. The court then found that the aggravating factors—Greenway's actions and the evidence of brutality—"far outweigh[ed]" Greenway's "chronological, emotional, and mental age" and that no other factors were "sufficiently substantial to call for leniency." The court thus considered and weighed all the factors.

The best that petitioner can do to show the state supreme court committed constitutional error by applying a causal-nexus test is to point to the way the court distinguished the mitigating factors in Greenway's case from those in *State v. Jimenez*, 165 Ariz. 444, 455–60 (1990) (in banc). But neither *Jimenez*, nor by extension *Greenway*, suggest a defendant's I.Q. should be excluded from consideration absent a showing of causal nexus. The Arizona Supreme Court decided *Jimenez* the year before Greenway's case, and the same court in *Jimenez* found the mitigating factors outweighed the aggravating factors. *See id.* at 460. In Greenway's case, the state court noted that Greenway had an I.Q. and age comparable to Jimenez, but that Jimenez, unlike Greenway, had offered testimony to establish that he suffered from hallucinations that compelled him to commit murder. *Greenway*, 170 Ariz. at 169 (citing *Jimenez*, 165 Ariz. at 456–60). The *Greenway* court said:

> Although the defendants in both *Jimenez* and the instant case registered comparable I.Q.s and ages, the defendant in *Jimenez* offered substantial testimony to establish that he also suffered from hallucinations and delusions which compelled him to commit the murder. The defendant in the present case limited expert testimony about his mental condition to his I.Q. The defendant offered no testimony to establish he suffered from hallucinations or delusions at the time he committed the murder.

*Id.* (internal citation omitted).

Greenway argues this passage means that there was a causal nexus in *Jimenez* but not in Greenway's case, thus indicating application of the causal-nexus test to exclude mitigating evidence in his case. Yet when we look to the underlying Arizona Supreme Court opinion in *Jimenez*, we see the discussion related to the defendant's mental state at the time of the crime was not about the impermissible causal-nexus test, but about the applicability of a statutory factor relating to mental illness.

Arizona statutory law at that time required courts to find a mitigating factor when "[t]he defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." Ariz. Rev. Stat. §13-703(G)(1) (1989) (current version at Ariz. Rev. Stat. §13-751(G)(1)). Thus the court in *Jimenez*, echoing the statutory language, found the defendant's mental illness to be a mitigating factor: "Although [the defendant's] impairment was not great enough to constitute a defense to the crime, we find that defendant's mental incapacity was not only a substantial mitigating factor in this case, but a major contributing cause of his conduct that was sufficiently substantial to outweigh the aggravating factors present in this case." *See* 165 Ariz. at 459 (internal quotation marks omitted). Accordingly, in *Jimenez*, the court concluded: "Given the strong evidence in this case of the severity of defendant's mental illness, combined with the substantial and relevant factor of defendant's young age and borderline intelligence level affecting his intellectual maturity, we believe that leniency is required." *Id.* at 460.

Jimenez was not only young and of borderline intelligence, but also suffered from a mental impairment that satisfied Arizona's statutory mitigation requirements. Greenway had no such impairment. Thus Greenway's case differed from *Jimenez*, not because Greenway failed to show a causal nexus between his low I.Q. and the murders, but because Greenway lacked the statutory factor of a mental impairment. In neither *Greenway* nor *Jimenez* did the Arizona Supreme Court apply a causal-nexus test to exclude mitigating factors.

Finally, even if we were to determine that the state court did apply the causal-nexus test in violation of *Eddings*, there could have been no prejudice because the aggravating factors overwhelmingly outweighed all the evidence that Greenway asserted as mitigating, including his age and low I.Q. "The harmless-error standard on habeas review provides that 'relief must be granted' if the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *See McKinney*, 813 F.3d at 822 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). Here, there were significant aggravating factors that the state court took into account: Greenway (1) committed multiple first degree murders; (2) for pecuniary gain; and (3) in an especially cruel, heinous, and depraved manner. *Greenway*, 170 Ariz. at 163–68. The Arizona Supreme Court noted that the multiple first degree murders constituted "egregious circumstances" and were "especially cruel." *Id.* at 165, 168 (quoting *Evans v. State*, 304 Md. 487, 538 (1985)). Even if the Arizona Supreme Court had excluded Greenway's low I.Q. for lack of a causal connection to the crime, its factual determinations demonstrate that Greenway's I.Q. was entitled to little mitigating weight. The court noted expert testimony that Greenway was "fully capable of functioning in society" and

"capable of making judgments with limited impairment." *Id.* at 169. Given the significant aggravating factors, we can say "with fair assurance" that Greenway's total evidence in nonstatutory and statutory mitigation, including his age and evidence of low I.Q., was not sufficient to overcome the aggravating factors and call for leniency. *See McKinney*, 813 F.3d at 822 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

## CONCLUSION

Neither the Arizona Supreme Court nor the trial court applied an impermissible causal-nexus test to exclude mitigating evidence. Both considered all of Greenway's evidence offered in mitigation and found it insufficient to outweigh the serious aggravating factors. Accordingly, there was no violation of clearly established federal law.

**AFFIRMED**.