691 P.2d 655

**STATE of Arizona, Appellee,**

v.

**Jess James GILLIES, Appellant.**

No. 5424–2.

Supreme Court of Arizona,
En Banc.

Oct. 30, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Jack Roberts and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

George Sterling, Jr., and John M. Antieau, Phoenix, for appellant.

HAYS, Justice.

On August 28, 1981, Jess J. Gillies was convicted of computer fraud, kidnapping, aggravated robbery, sexual assault, and first degree murder. The facts underlying this conviction are set forth in their entirety in *State v. Gillies* (hereafter cited as *Gillies I*), 135 Ariz. 500, 662 P.2d 1007 (1983).

In *Gillies I, id.*, we affirmed Gillies' convictions but remanded for resentencing because the trial judge had improperly admitted a prior conviction and had incorrectly found some aggravating circumstances. A jury trial was held on the issue of Gillies' prior conviction and Gillies was found to have been previously convicted of theft, a class-6 felony. A second mitigation and sentencing hearing was held and Gillies was again sentenced to death for first degree murder. Gillies was also sentenced to 15 years imprisonment for computer fraud, 15 years for aggravated robbery, 21 years for kidnapping, and 21 years for sexual assault. The trial judge ordered that these sentences should be served consecutively. Gillies appealed, and we have jurisdiction pursuant to Ariz. Const. art. 6, § 5 and A.R.S. § 13–4031.

Both Gillies and his attorney submitted appellate briefs. The briefs raised issues in three categories: 1) the constitutionality of Arizona's death penalty, 2) the lawfulness of Gillies' sentence of death, and 3) the propriety of consecutive and aggravated sentences for the nonmurder counts of

aggravated robbery, computer fraud, kidnapping, and sexual assault.

## THE CONSTITUTIONALITY OF ARIZONA'S DEATH PENALTY

■ Appellant first contends that he was denied his sixth-amendment right to a jury trial because the jury was excluded from considering "the factual issues presented to the court in the death sentencing procedure." U.S. Const. amend. VI; Ariz. Const. art. 2, § 23. The death sentence procedure is controlled by A.R.S. § 13–703. That statute expressly states that the trial judge, not the jury, is to make a determination of aggravating and mitigating factors. A.R.S. § 13–703(B). Furthermore, we have repeatedly rejected the notion that jury participation is required in capital sentencing determinations. *State v. Gretzler*, 135 Ariz. 42, 56, 659 P.2d 1, 15 (1983) *reh'g denied*, —— U.S. ——, 104 S.Ct. 32, 77 L.Ed.2d 1452 (1983). *See also Spaziano v. Florida*, —— U.S. ——, 104 S.Ct. 3154, 3155, 82 L.Ed.2d 340 (1984). We find no error.

Appellant next contends that exclusion of the jury from consideration of the death penalty violates his constitutional protection against cruel and unusual punishment. U.S. Const. amends. XIV and VIII; Ariz. Const. art. 2, § 15. Appellant urges that the jury is the ultimate repository of society's standards and as such must pass on the imposition of the death penalty. Exclusion of the jury, according to the appellant, assures cruel and unusual punishment.

■ We do not agree with this reasoning. The death penalty is reserved only for the most egregious murderers. As such, a comparison must be made among individuals. In this regard, we believe that a trial judge is more experienced at sentencing than a jury and is therefore better able to impose similar sentences in analogous cases. *See Proffitt v. Florida*, 428 U.S. 242, 252, 96 S.Ct. 2960, 2966, 49 L.Ed.2d 913, 923 (1976). In this fashion, greater consistency can be achieved and cruel or arbitrary imposition avoided. We hold that capital sentencing by a trial judge does not violate proscriptions against cruel and unusual punishment.

Appellant contends that the Arizona death penalty statute, A.R.S. § 13–703, is unconstitutional because it lacks standards for evaluating aggravating and mitigating circumstances. Appellant urges that this leads to arbitrary impositions of the penalty. We reject this contention.

■ A.R.S. § 13–703(F) and (G) clearly set forth what factors a trial judge may consider as aggravating and mitigating. In compliance with *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), a defendant can present any relevant evidence in mitigation. A.R.S. § 13–703(G). The exact balance between these factors is decided by the trial judge. A.R.S. § 13–703(E). While the trial judge cannot assign numerical equivalents to such factors as cruelty or duress, this does not mean that he is given unbridled discretion. *See Proffitt v. Florida, supra*, 428 U.S. at 258, 96 S.Ct. at 2969, 49 L.Ed.2d at 926; *State v. Mata*, 125 Ariz. 233, 242, 609 P.2d 48, 57 (1980).

■ If there is one aggravating factor and no mitigating factors, the trial judge must impose the death penalty. A.R.S. § 13–703(E). Appellant contends that this creates a mandatory death penalty that allows for too little discretion. A balance must be struck between mandatory sentencing procedures on the one hand and unbridled judicial discretion on the other. We cannot say that A.R.S. § 13–703 strikes this balance in an unconstitutional fashion. The defendant's ability to raise any and all relevant factors in mitigation provides the required discretion; the statutory procedure provides the required guidance. *See Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859, 883 (1976).

■ A.R.S. § 13–703(C) places the burden of establishing mitigating circumstances on the defendant. Appellant argues that this procedure shifts the burden of proof to him, thereby violating his due process rights under the fourteenth amendment. This argument was discussed and

rejected in *State v. Smith,* 125 Ariz. 412, 416, 610 P.2d 46, 50 (1980).

Appellant proposes to "incorporate by reference" all of the constitutional arguments he raised in his briefs in *Gillies I.* We decided those arguments there and decline to do so again. *See State v. Rodgers,* 134 Ariz. 296, 302, 655 P.2d 1348, 1354 (App.1982).

## THE LAWFULNESS OF GILLIES' DEATH SENTENCE

### 1. *The Murder was Committed in an Especially Cruel Manner*

Appellant contends that Suzanne Rossetti's murder was not committed in an especially cruel manner. We disagree. In *Gillies I* we said, "[b]ecause the finding of cruelty [in this case] is so compelling it is unnecessary to make specific findings of heinousness and depravity." *Gillies I, supra,* 135 Ariz. at 513, 662 P.2d at 1020. The trial court, during resentencing, found cruelty as an aggravating factor. A.R.S. § 13–703(F)(6). Pursuant to our duty to independently review the record, we again find cruelty as an aggravating factor.

The aggravating factor of cruelty focuses on the victim's mental and physical suffering. *State v. Jeffers,* 135 Ariz. 404, 429, 661 P.2d 1105, 1130 (1983). To this end, we envision what Suzanne Rossetti thought and felt during the eight hours of her captivity on January 28 and 29, 1981.

That evening she was on her way to pick up her father. While at a corner grocery she locked her keys in her car; Gillies and Logan helped her get them out. She was appreciative, bought them a six-pack of beer and offered them a ride home. Once the three were in the car, the two men forced her to drive to a secluded area where both men raped her. Logan went through her purse while Gillies had her on the ground. Afterwards they tied her up, put her in the back of her car, and forced her to direct them to her Scottsdale apartment. They raped Rossetti again at her apartment. Eventually, the two men put her back in the car and drove to the Superstition Mountains.

On a deserted mountain backroad, they took her from the car. The men stood Rossetti in front of a steep embankment and told her to climb down. Gillies hit her when she refused. After she started over the edge, Logan kicked her off the embankment. The fall didn't kill her, but she was cut badly on the top of her head. She pleaded for mercy. "Leave me alone I'm going to die anyway," she told them. According to Gillies, he distracted her so Logan could sneak up from behind and beat Rossetti over the head with a rock. Logan, however, accused Gillies of wielding the rock. The killer struck her repeatedly with the rock. She was young, so it took a number of blows. She died from loss of blood and a crushed skull and was buried underneath a pile of large, white, granite boulders. Gillies later told an acquaintance that they killed Rossetti so she could not testify against them for raping her.

The trial judge set out five factors as being indicative of cruelty:

1. Rossetti was kept for 8 hours uncertain as to her ultimate fate.
2. She was raped on two occasions.
3. She was pushed from a 40-foot embankment.
4. Despite begging for her life, she was still beaten to death with a rock.
5. She was buried alive.

We concur as to four of these factors and hold that Rossetti's murder was committed in a cruel manner. The fifth factor should not have been considered by the trial judge. Although the evidence indicates Rossetti was buried alive, it is inconclusive as to whether Rossetti was ever conscious while in her grave. "Where the evidence is inconclusive as to whether the victim was conscious during the infliction of violence to his person, the sentencing court cannot find that cruelty existed." *Gillies I, supra,* 135 Ariz. at 513, 662 P.2d at 1020.

A victim's certainty or uncertainty as to his or her ultimate fate can be indicative of cruelty and heinousness. *Cf. State v. Steelman,* 126 Ariz. 19, 26, 612

P.2d 475, 482 (1980). Here, Rossetti was held captive for eight hours. During the long drive from Scottsdale to the mountains she lay bound in the back of her car. Gillies later told Scott Vanderhoof that when they stopped in the mountains, Rossetti said, "I guess you are going to kill me now." Appellant argues that a factor, both whose presence and absence can be indicative of cruelty, should not be considered. It is clear that a victim who lingers, knowing he or she will soon be killed, suffers. It is equally clear that a victim who, like Suzanne Rossetti, is kept uncertain as to his or her fate, also suffers. These victims are to be contrasted with the individual who is killed instantly without knowing what happened. *See State v. Graham*, 135 Ariz. 209, 212, 660 P.2d 460, 463 (1983). Appellant argues that the aggravating factors of cruelty and heinousness have been improperly used interchangeably. This, according to appellant, provides no guidance to prosecutors and no restraint on the discretion of sentencing judges. Cruelty, heinousness and depravity comprise one set of aggravating factors. A.R.S. § 13–703(F)(6). While they have been defined disjunctively, analytically they are interlinked. *See State v. Jeffers, supra,* 135 Ariz. at 430, 661 P.2d at 1131. One fact pattern is frequently illustrative of all three factors. This is because the act of cruelty to the victim can also reflect on the perpetrator's state of mind. This Janus-like quality does not render the aggravating factors unconstitutional under the *Godfrey* test. *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398, 406 (1980). *See also State v. Ortiz*, 131 Ariz. 195, 206, 639 P.2d 1020, 1031 (1981).

During the eight hours Suzanne Rossetti was captive, she was kidnapped, bound, robbed, and repeatedly raped. Appellant contends that we may not consider events prior to the murder on the issue of cruelty because he was separately punished for these crimes. We disagree. We feel it essential to inquire into the totality of circumstances surrounding the murder to determine whether aggravating factors exist. *Cf. State v. Steelman, supra,* 126 Ariz. at 25, 612 P.2d at 481. Rape, for example, is certainly an event that can cause a great deal of mental and physical suffering to the victim and should therefore be considered in the cruelty calculation.

Gillies, in his *pro se* brief, argues that because he was convicted of raping Suzanne Rossetti only once, we should not take into consideration repeated rapes, as an aggravating circumstance. Gillies told Scott Vanderhoof of three separate rapes. Vanderhoof's testimony at trial adequately provides the basis for considering this factor.

Appellant maintains that he was sentenced to death simply because Rossetti was killed in a crude manner. It was not only the manner of death, but also the circumstances surrounding it and their effect on the victim that amply warrant the finding of cruelty.

### 2. The Murder was Committed in a Heinous and Depraved Manner

The trial court found two factors indicative of heinousness and depravity: 1) the senselessness of the murder, and 2) the savage manner of death. We agree with both these findings.

Appellant contends that all murders are senseless, and so this factor should not be considered. Gillies in his *pro se* brief argues, "In any case the murdering of the victim made sense, in the sense, that it eliminated the only possible witness to the crime of kidnapping, aggravated robbery, and sexual assault." We believe elimination of witnesses, as a motive for murder, also illustrates heinousness and depravity. *Cf. State v. Smith,* 141 Ariz. 510, 511–512, 687 P.2d 1265, 1266–67 (1984).

Rossetti was forced to climb down a steep embankment in the dark. Once over the edge she was kicked off. Pleading for mercy, she was beaten to death with a rock. When Gillies returned to

Phoenix, he met his girlfriend, Tamara Dice. In the presence of Dice, Gillies said to Logan, "[w]asn't the Superstitions fun?" When Gillies was later arrested, he asked Detective Hackworth about Arizona's death penalty. When Hackworth told Gillies that convicted first degree murderers die in the gas chamber, Gillies replied, "All that, for killing that bitch?" There is ample evidence to support a finding of heinousness and depravity.

### 3. *Mitigating Circumstances*

Gillies raised five factors in mitigation:

1. Age.
2. Changed attitudes.
3. Intoxication at the time of the crime.
4. The felony murder instruction.
5. The life sentence for codefendant Logan.

At resentencing, the trial judge found these factors insufficient to call for leniency. Gillies now asserts that the trial judge incorrectly balanced aggravating and mitigating factors. According to Gillies, the one aggravating factor was balanced against each separate mitigating factor and not against their sum total. We disagree. A fair reading of the trial transcript indicates that the trial judge properly performed his duty. We have also independently reviewed the record and agree that these mitigating factors do not require commutation to a life sentence.

■ Gillies was twenty years old at the time of the crime. While youth is certainly a mitigating factor, *State v. Valencia*, 132 Ariz. 248, 250, 645 P.2d 239, 241 (1982), we believe that its impact here is minimized by the extent and duration of Gillies' participation in the murder.

■ Gillies maintains he has changed his attitudes while in prison. He has become religious, shown remorse, and proved himself to be a placid prisoner. While these changes are commendable, persons sentenced to death frequently change their outlook on life. Balancing these human factors against Gillies' former behavior militates in his favor, but not such as to require leniency, given the seriousness of his crimes.

■ Gillies claims intoxication during the crime as a mitigating factor. A.R.S. § 13–703(G)(1). The evidence does not support this view. Rossetti was held captive eight hours. We cannot believe that during this entire time Gillies' capacity was so impaired that he could not appreciate the wrongfulness of his behavior.

■ The jury convicted Gillies of first degree murder. This conviction could have been based on premeditation or on felony murder. A felony murder instruction cannot be a mitigating factor if there is no doubt as to the defendant's intention to kill. *Gillies I, supra*, 135 Ariz. at 513, 662 P.2d at 1020. Here, there is no doubt about Gillies' intention to kill Suzanne Rossetti. He drove her to the Superstitions, at a minimum distracted her so Logan could kill her, and aided in her burial. Appellant's contentions on this issue are without merit.

■ Gillies' codefendant, Logan, was sentenced to life imprisonment. This may constitute a mitigating factor. *See State v. Watson*, 129 Ariz. 60, 64, 628 P.2d 943, 947 (1981). Logan's sentence, however, stemmed from a plea agreement whereby he agreed to plead guilty to first degree murder and lead searchers to the body in exchange for a life sentence. Appellant was offered a similar opportunity. "Any resulting inequity between the two sentences is a consequence induced by our plea bargaining system." *Gillies I, supra*, 135 Ariz. at 515, 662 P.2d at 1022.

■ Appellant argues that Logan was more culpable than he and as such it was improper to sentence Logan to life and him to death. We disagree. Both men accused each other of wielding the rock; both men had the intent to kill Suzanne Rossetti. The question is not whether Logan should also have been executed, but whether execution of Gillies is lawful and appropriate. We believe it is.

#### 4. *Proportionality Review*

In *Gillies I* we conducted a proportionality review and found Gillies' sentence not to be disproportionate. Pursuant to our duty, we have again compared his sentence to that of other similarily situated defendants and have found it was neither disproportionate nor excessive.

The *Gillies'* fact pattern is similar to that in *State v. Bishop*, 118 Ariz. 263, 576 P.2d 122 (1978), *affirmed*, 127 Ariz. 531, 622 P.2d 478 (1980). There, the defendant repeatedly struck the victim in the head with a claw hammer, dumped him in a 15-foot mine shaft, and showered him with rocks. The murder was found to be cruel, heinous and depraved. Bishop's codefendants both received life sentences. Although Bishop produced some mitigating factors, the death penalty was held to be appropriate given the quality of the crime and Bishop's relative participation in it.

Similarly, in *State v. Lambright*, 138 Ariz. 63, 673 P.2d 1 (1983), there was one aggravating circumstance—the murder was committed in a cruel, heinous or depraved manner. Like Gillies, the defendant kidnapped and eventually murdered his victim. One codefendant was granted immunity in exchange for her testimony and Lambright proved some mitigating factors.

We find these cases similar to *Gillies*. While we do not know whether Gillies or Logan wielded the rock that killed Rossetti, we know at a minimum that he intended her death and aided in her burial.

### THE PROPRIETY OF CONSECUTIVE AND AGGRAVATED SENTENCES FOR THE RAPE, KIDNAP, ROBBERY, AND COMPUTER FRAUD COUNTS

#### 1. *The Admissibility of Appellant's Prior Conviction*

Before resentencing, a trial was held and a jury found that Gillies had been previously convicted of theft, a class-6 felony. Gillies contends that the trial judge erred in allowing his prior conviction into evidence. He alleges that the records were inadmissible hearsay that displayed a lack of trustworthiness and were improperly certified.

We disagree. The record package admitted at trial contained photocopies of Gillies' picture, a fingerprint and physical description card, and a prison commitment order.

Public records, such as these, are admissible as hearsay exceptions, unless they display a lack of trustworthiness. 17A A.R.S., Rules of Evidence, rule 803(8). *See also State v. Dixon*, 127 Ariz. 554, 559, 622 P.2d 501, 506 (App.1980). Gillies argues that the records were untrustworthy because his name was twice misspelled as "Gilles" and because there was only one certification for the three documents.

The two places his name was misspelled had other indicia of reliability. One document had his photograph; the other had his fingerprints and physical description. We cannot say that for lack of an "i" this evidence should have been rejected as untrustworthy. Similarly, the certification was also not untrustworthy. The prior conviction records were properly admitted.

#### 2. *Aggravating Circumstances for the Rape, Robbery, Kidnap and Computer Fraud*

Pursuant to A.R.S. § 13-604(B), the trial judge sentenced Gillies to the maximum terms possible for the computer fraud, rape, aggravated robbery, and kidnapping counts. For maximum terms to be imposed under this statute, the trial judge must find aggravating factors. He set out six:

1. Infliction of physical injury and eventual death during the commission of the offenses.
2. The presence of an accomplice.
3. A prior felony conviction.
4. The crimes were committed while Gillies was on work furlough.
5. The victim was bound and terrorized for 8 hours.
6. The offenses were committed in a cruel, heinous and depraved manner.

The trial judge found these factors once and then applied them to all four counts. We cannot agree that these aggravating

circumstances apply equally to each of the four counts. For example, we find it difficult to understand how computer fraud can be committed in a cruel, heinous or depraved manner. The better practice, in cases like this of multiple counts, is to set out the aggravating and mitigating factors for each separate count.

 While we do not find all the aggravating factors that the trial judge did, we believe that there were sufficient and appropriate aggravating factors to justify imposition of maximum sentences. "Where a sentence is within the permissible statutory limits, it will not be modified or reduced on appeal unless it clearly appears excessive under the circumstances." *State v. Pickard*, 105 Ariz. 219, 221, 462 P.2d 87, 89 (1970).

Appellant contends that the trial court failed to state sufficient reasons for making his sentences run consecutively. *See* A.R.S. § 13–708. The trial court set forth four reasons indicating why appellant's sentences should run consecutively: 1) the aggravating circumstances, 2) protection of society, 3) the prior felony conviction, and 4) Gillies' work furlough release status. These reasons were sufficient.

Gillies contends that he was denied effective assistance of counsel because his attorney did not object to the imposition of the aggravated and consecutive sentences. We disagree. In *State v. Lee*, 142 Ariz. 210, 214, 689 P.2d 153, 157 (1984), we set forth the standard by which claims of ineffective assistance of counsel are measured. The defendant must show two things: first, that his attorney lacked minimal competence; second, that but for this incompetence the result would probably have been different. The prior standard, in effect at the time of Gillies' previous trials, only required the defendant to prove the first prong of this two-part test. *See State v. Watson*, 134 Ariz. 1, 653 P.2d 351 (1982). Under either of these two standards, Gillies was not denied effective assistance of counsel. Gillies' attorney at resentencing adequately argued, called a witness, and produced evidence in mitigation. While this mitigation evidence was directed toward the murder charge, it was also relevant as to the nonmurder counts. *See* A.R.S. § 13–604(B) and A.R.S. § 13–702(E).

Gillies raises numerous other issues in his *pro se* brief. We have read that brief and, insofar as we have not addressed these issues directly, we find them without merit.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none. Accordingly, we affirm the judgments of conviction and sentences as specified.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.