SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| STATE OF ARIZONA, | ) Arizona Supreme Court |
| | ) No. CR-07-0139-AP |
| Appellee, | ) |
| | ) Maricopa County |
| v. | ) Superior Court |
| | ) No. CR2002-010926 |
| BRIAN ALLEN WOMBLE, | ) |
| | ) |
| Appellant. | ) |
| | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Andrew G. Klein, Judge

**AFFIRMED**
_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                    Phoenix
     By   Kent E. Cattani, Chief Counsel
          Criminal Appeals/Capital Litigation Section
          John Pressley Todd, Assistant Attorney General
Attorneys for State of Arizona

JAMES J. HAAS, MARICOPA COUNTY PUBLIC DEFENDER             Phoenix
     By   Peg Green, Deputy Public Defender
          Tennie B. Martin, Deputy Public Defender
Attorneys for Brian Allen Womble
_____

**R Y A N**, Justice

¶1      Brian Allen Womble was convicted of first degree murder and sentenced to death. This is an automatic appeal under Arizona Rules of Criminal Procedure 26.15 and 31.2. This Court has jurisdiction under Article 6, Section 5(3) of the

Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 13-4031 (2010).

**I[1]**

**A**

¶2      On March 14, 2002, Paul Bradley Speer and his half-brother, Chris Womble, burglarized Adan and Enriqueta Soto's apartment and were arrested shortly thereafter.  While awaiting trial, Speer was incarcerated in the Maricopa County jail.

¶3      Telephone calls made by inmates in the jail were recorded.  Speer called Brian Womble, his other half-brother, many times between March and June 2002.  Detectives later identified these calls and reviewed their content.

¶4      Speer initially asked Womble to speak with the Sotos to persuade them not to testify.  By the end of April 2002, however, Speer and Womble had moved to "Plan B," which was to kill the Sotos.  On May 5, Speer told Womble to get his "heat" from a safe deposit box.  A week later, Speer urged Womble to "make sure [to] take care of everybody in that house."  Womble told Speer he planned to make a silencer.

¶5      On May 17, the brothers debated different plans to get Womble inside the Sotos' apartment.  A week later, Womble

---

[1]     Except in our independent review of the death sentence, we view the facts in the light most favorable to sustaining the jury's verdict. *State v. Garza*, 216 Ariz. 56, 61 n.1, 163 P.3d 1006, 1011 n.1 (2007).

2

assured Speer that he would follow through with the plan that night.  Sometime before 5:00 a.m. on May 25, Womble broke into the apartment and shot Mr. and Mrs. Soto while they were asleep. Mr. Soto died, and Mrs. Soto was critically injured.  The Sotos' baby, who was sleeping with them in their bed, was uninjured.

¶6        Womble and Speer referred to the murder several times during subsequent calls.  The day after the murder, Womble confirmed that he had "fixed both parts."  Speer advised Womble to get rid of his guns.  During a June 10 telephone call, Womble told Speer that Mrs. Soto was still alive.

¶7        Womble was indicted for first degree murder, attempted first degree murder, conspiracy to commit first degree murder, burglary, misconduct involving weapons and two counts of aggravated assault.[2]  On April 26, 2007, the jury returned guilty verdicts on all charges.[3]

¶8        During the aggravation phase, the jury unanimously found three aggravating circumstances proved beyond a reasonable doubt:  (1) Womble committed the offense while on probation for

---

[2]    The grand jury also indicted Speer for first degree murder and five other felonies in connection with the murder.  *See* *State v. Speer*, 221 Ariz. 449, 454 ¶ 20, 212 P.3d 787, 792 (2009).  Womble's case was severed before Speer's trial.

[3]    The trial court severed the charge of weapons misconduct and later found Womble guilty of that charge.

a felony offense, A.R.S. § 13-751(F)(7)(b)(2010);[4] (2) in the commission of the offense, Womble knowingly created a grave risk of death to the Sotos' infant son, § 13-751(F)(3); and (3) the murder was committed in an especially heinous or depraved manner, § 13-751(F)(6).

¶9        Womble made a brief allocution during the penalty phase, but otherwise offered no additional evidence or argument for leniency.  The jury determined that death was the appropriate sentence.

## II

### A

¶10        Womble first argues that the trial court violated his Sixth Amendment right to confrontation by allowing a detective to testify to statements made by a jail informant.  The Court usually reviews Confrontation Clause challenges de novo.  *State v. Boggs*, 218 Ariz. 325, 333 ¶ 31, 185 P.3d 111, 119 (2008).  However, because Womble failed to object below on this ground, he must show fundamental error.  *Id.*

¶11        At trial, the detective testified that he had not heard of Brian Womble until a jail informant came forward with

---

[4]    Since the date of the offense, Arizona's capital sentencing statutes have been reorganized and renumbered as A.R.S. §§ 13-751 to -759 (2010).  2008 Ariz. Sess. Laws, ch. 301, §§ 26, 38-41 (2d Reg. Sess.).  Because the renumbered statutes are not materially different from the prior version, we cite the current version unless otherwise noted.

information.  Womble objected on hearsay grounds, and the court overruled the objection.  The State then asked how the detective had learned of Womble.  The detective named the jail informant and explained that after interviewing him,

> I learned that Paul Speer and Christopher Womble had a brother by the name of Brian Womble, and upon further investigation I was able to learn the address and phone numbers associated with Brian Womble, and another detective was able to obtain a court order for listening to phone calls regarding those particular phone numbers.

Womble made no further objections.

¶12     The Confrontation Clause of the Sixth Amendment generally precludes the admission of testimonial hearsay unless the defendant had a prior opportunity to cross-examine the unavailable declarant.  *Crawford v. Washington*, 541 U.S. 36, 68 (2004).  The Confrontation Clause, however, "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Id.* at 59 n.9; *see also State v. Tucker*, 215 Ariz. 298, 315 ¶ 61, 160 P.3d 177, 194 (2007); *State v. Roque*, 213 Ariz. 193, 214 ¶ 70, 141 P.3d 368, 389 (2006).

¶13     The detective here testified only that the informant told him of Womble's existence, which resulted in the detective seeking a court order to review the jail tapes.  The testimony was not offered to prove that Womble was involved in the murder, but rather only to explain why the detective obtained the order

5

to listen to Speer's calls to Womble.  The testimony thus did not violate the Confrontation Clause.

B

¶14      Womble next contends that the trial court abused its discretion by not suppressing the jail recordings of his conversations with Speer.  Womble claims that because nine recordings listened to by the detectives were not preserved, the remaining tapes should not have been admitted.

¶15      In June 2002, a detective obtained a court order for the release by a private recording company of jail telephone calls made by Speer to the telephone numbers of Womble's parents and a family friend with whom Womble was living.  Several detectives listened to the taped conversations and preserved copies of the relevant ones; the police did not preserve copies of nine calls.

¶16      In July 2002, the State gave Womble's attorney copies of the tapes it possessed and provided a supplemental listing of calls the officers had reviewed but not preserved.  Womble's attorney then filed a discovery motion under Arizona Rule of Criminal Procedure 15.1(b)(2), seeking "[a]ll statements of the defendant and of any person who will be tried with the defendant."  The private company that kept the tapes had destroyed tapes of those calls not preserved by the officers, under a company policy that called for destruction of tapes not

6

requested by either the defense or the prosecution within six months of their recording.

**¶17**     In 2005, Womble moved to suppress the tapes of the recorded jail calls.  At the evidentiary hearing, the detective who requested the court order to review the jail calls testified that he preserved any information related to the homicide, whether inculpatory or exculpatory.  Alluding to *Arizona v. Youngblood,* 488 U.S. 51, 58 (1988), for the proposition that the "failure to preserve potentially useful evidence does not constitute a denial of due process unless a criminal defendant can show bad faith on the part of the police," the trial court denied the motion.

**¶18**     Womble contends that the destruction of the tapes requires reversal.  We rejected this argument in *State v. Speer*, 221 Ariz. 449, 457 ¶ 38, 212 P.3d 787, 795 (2009).  Womble, like Speer, failed to show that the "destroyed tapes contained material exculpatory evidence or that the police acted in bad faith."  *Id*.  "The mere possibility that destroyed evidence could have exculpated a defendant is insufficient to establish a due process violation."  *State v. O'Dell*, 202 Ariz. 453, 458 ¶ 13, 46 P.3d 1074, 1079 (App. 2002).[5]  The detectives understood

---

[5]     Womble also contends the State violated Rule 15.1(b)(2), which requires the state to disclose all written or recovered statements of the defendant or any person who will be tried with the defendant.  Ariz. R. Crim. P. 15.1(b)(2) & cmt.  However, in

7

what evidence they were required to preserve, and nothing suggests that they failed to preserve tapes of the relevant calls. *See Speer*, 221 Ariz. at 457 ¶¶ 37-38, 212 P.3d at 795.

**C**

**¶19** Womble requested an instruction on second degree murder and attempted second degree murder. The court rejected the request, finding that no rational juror could fail to find premeditation. Womble now argues that a jury could rationally conclude that he led Speer to believe that he was going to kill the Sotos, but intended only to cause serious physical injury or possibly death.

**¶20** "A sentence of death may not be imposed if the jury was not permitted to consider a lesser-included, non-capital offense and the evidence would have supported such a verdict." *State v. Nordstrom*, 200 Ariz. 229, 253 ¶ 81, 25 P.3d 717, 741 (2001) (citing *Beck v. Alabama*, 447 U.S. 625, 627 (1980)). The "key to this rule is 'whether the jury could rationally fail to find the distinguishing element of the greater offense.'" *State v. Jones*, 203 Ariz. 1, 11 ¶ 37, 49 P.3d 273, 283 (2002) (quoting *State v. Murray*, 184 Ariz. 9, 34, 906 P.2d 542, 567 (1995)); *see also State v. Bearup*, 221 Ariz. 163, 168 ¶ 23, 211 P.3d 684, 689 (2009); *State v. Landrigan,* 176 Ariz. 1, 6, 859 P.2d 111, 116

---

this case, the State produced all calls taped by the detectives and disclosed a list of the phone calls they reviewed but did not preserve, and thus complied with Rule 15.1(b)(2).

8

(1993) ("*Beck* does not require a trial court to instruct on a lesser offense that is unsupported by the evidence."). In this case, the distinguishing element is premeditation.[6]

¶21     Womble and Speer planned the murders of the Sotos during telephone conversations that took place over four weeks. After the murder, Womble made several statements showing he intended to kill the Sotos and thought he had succeeded. Womble also told Speer that killing the Sotos made him feel good. Womble broke into the Sotos' apartment at night, selected the more powerful of his two guns and used ammunition designed to increase internal damage to the body as well as a silencer to avoid detection. Additionally, on the day before the murder, Womble told a therapist that he planned to kill someone.

¶22     Womble's statements after the murder, combined with the "deliberate and calculated steps" he took before the murder, conclusively establish that he intended to kill the Sotos. The transcripts of the jail calls do not include any statements by Womble suggesting that he considered abandoning his plan. Given

---

[6]     Premeditation requires proof

> that the defendant act[ed] with either the intention
> or the knowledge that he [would] kill another human
> being, when such intention or knowledge precede[d] the
> killing by any length of time to permit reflection.
> Proof of actual reflection is not required, but an act
> is not done with premeditation if it is the instant
> effect of a sudden quarrel or heat of passion.

A.R.S. § 13-1101(1) (2010).

9

the overwhelming evidence presented by the State, no rational juror could fail to find premeditation.

**D**

**1**

¶23     During the aggravation phase, the State argued that Mr. Soto's murder was heinous or depraved because Womble's motive was to prevent Mr. Soto from testifying at Speer's burglary trial.

¶24     Womble now asserts that when the crime was committed, the state was required to prove witness elimination plus another factor to meet its burden for the (F)(6) aggravator.  He argues that it was not until *State v. Johnson*, 212 Ariz. 425, 439 ¶ 58, 133 P.3d 735, 749 (2006), that this Court held that witness elimination alone could form the basis for a finding of heinousness or depravity.

¶25     Citing *Bouie v. City of Columbia*, 378 U.S. 347, 352–54 (1964), Womble contends that *Johnson*'s construction of § 13-751(F)(6) was an unforeseeable and retroactive expansion of the law.  As such, he argues that its interpretation of (F)(6) based on witness elimination violated his due process rights and "operate[d] precisely like an ex post facto law," quoting *Bouie*, 378 U.S. at 353.

¶26     Womble's reliance on *Bouie* is misplaced.  In *Bouie*, the defendants were convicted of violating a trespass statute.

10

*Id.* at 350. Although the state law by its terms only prohibited "the act of entry on the premises of another after receiving notice not to enter," the state court interpreted the statute to also apply to remaining on the premises. *Id.* In reversing, the Supreme Court held that a defendant is deprived of his right to fair notice when "a statute precise on its face has been unforeseeably and retroactively expanded by judicial construction." *Id.* at 352, 355.

¶27    In contrast, witness elimination was recognized as a factor supporting heinousness or depravity long before Womble committed this murder. In *State v. Gretzler*, the Court set forth five factors to be considered in determining whether a murder is heinous or depraved. 135 Ariz. 42, 52-53, 659 P.2d 1, 11-12 (1983).[7] Three years later, we noted that "[i]n addition to th[ose] five factors . . . we have also found that depravity is indicated where defendant admitted he committed the murder to prevent the victim from testifying against him concerning a felony that occurred contemporaneously with the murder." *State v. Correll*, 148 Ariz. 468, 481, 715 P.2d 721, 734 (1986) (citing

---

[7]    The following five factors support a finding of heinousness or depravity: (1) relishing; (2) infliction of gratuitous violence; (3) needless mutilation of the victim; (4) senselessness of the crime; and (5) helplessness of the victim. *Gretzler*, 135 Ariz. at 52-53, 659 P.2d at 11-12. However, a finding of senselessness or helplessness alone generally does not establish heinousness or depravity. *State v. Murdaugh*, 209 Ariz. 19, 33 ¶ 67, 97 P.3d 844, 858 (2004).

11

*State v. Smith*, 141 Ariz. 510, 511-12, 687 P.2d 1265, 1266-67 (1984)); *see also State v. Stanley*, 167 Ariz. 519, 529, 809 P.2d 944, 954 (1991) (killing five-year-old daughter "for no reason other than to eliminate her as a witness" to her mother's murder supports finding of depravity); *State v. Gillies*, 142 Ariz. 564, 570, 691 P.2d 655, 661 (1984) (recognizing witness elimination as supporting finding of heinousness or depravity).

¶28 In *State v. King*, although finding that killing a witness "demonstrates a cold-blooded, vile state of mind," the Court rejected a finding of the (F)(6) aggravator based solely on witness elimination. 180 Ariz. 268, 285-86, 883 P.2d 1024, 1041-42 (1994). In that case, the defendant killed a store clerk and security guard during the course of a robbery. *Id.* at 270, 883 P.2d at 1026. The opinion suggested that witness elimination was "similar" to the factors of helplessness and senselessness, stating that "only under limited circumstances will [these factors] — together or standing alone — lead to a finding that a murder was committed in a heinous or depraved manner." *Id.* at 286-87, 883 P.2d at 1042-43.

¶29 In a concurring opinion, Justice Moeller made clear that, under some circumstances, witness elimination alone can support an (F)(6) finding. *Id.* at 289-90, 883 P.2d at 1045-46 (Moeller, J., concurring). He explained, consistent with our previous decisions, that witness elimination would suffice to

12

prove heinousness or depravity when a witness was murdered to prevent that person from testifying about another crime, which was not the case in *King*. *Id.* at 290, 883 P.2d at 1046.

¶30 Shortly thereafter, expressly adopting Justice Moeller's *King* concurrence, we distinguished the murder of a witness to a different crime from the more common case of murder of the victim of the same crime. *State v. Ross*, 180 Ariz. 598, 606, 886 P.2d 1354, 1362 (1994). The Court set forth three circumstances under which witness elimination could "be proper evidence of heinousness or depravity": (1) the victim witnessed another crime and was killed to prevent testimony about that crime; (2) defendant made a statement or other evidence of his state of mind shows witness elimination was a motive; or (3) some extraordinary circumstances show the murder was motivated by a desire to eliminate witnesses. *Id.* Since *Ross*, we have consistently held that the elimination of a witness to another crime will support a finding of heinousness or depravity.

¶31 *Johnson*, relying on *Ross*, confirmed that the elimination of a witness to some other crime "can itself be sufficient to find heinousness or depravity." 212 Ariz. at 439 ¶¶ 59-60, 133 P.3d at 749. There, the defendant murdered a victim of a robbery committed by him and a fellow gang member after learning the victim intended to testify at the partner's preliminary hearing. *Id*. at 428-29 ¶¶ 2-4, 133 P.3d at 738-39.

13

We distinguished *King*, noting that in that case the defendant murdered the victim of the same crime, not some other crime. *Id.* at 439 ¶ 58, 133 P.3d at 749. In doing so, we "uph[e]ld *Ross*'s distinction between the elimination of the victim of the capital crime, which would be present in every murder and the elimination of a witness to *another* crime, which is a separate and serious act." *Id.* at ¶ 60 (internal quotation marks and citation omitted).

¶**32** Thus, *Johnson* was not an unforeseeable and retroactive judicial expansion of the law. It explained and affirmed the long-recognized difference between eliminating a witness to the crime itself and eliminating a witness to a separate crime. *See State v. Schad*, 163 Ariz. 411, 420, 788 P.2d 1162, 1171 (1989) (finding no unforeseeable judicial enlargement of the (F)(5) pecuniary gain aggravator when a decision issued after the murder "merely recognized the pre-existing scope" of the statute). The trial court's instruction properly permitted the jury to find the (F)(6) aggravator based on a finding of witness elimination alone and did not violate Womble's due process rights.

### 2

¶**33** Womble also argues that the trial court erred in instructing the jury that it could find the (F)(6) aggravator

14

based on a combination of heinousness or depravity. The trial court's instruction stated, in part, that "the presence of any one factor, or a combination of factors, is sufficient to establish this aggravating circumstance. Your finding must be unanimous as to whether it is either especially heinous or depraved, or combination thereof." Womble contends that because some jurors may have found the murder heinous and others depraved, he may have been denied a unanimous jury finding on the aggravator. *See* A.R.S. § 13-752(E) (2010) (requiring that a jury's finding of an aggravating circumstance be unanimous). We review only for fundamental error because Womble did not object to the instruction. *See State v. Kiles*, 222 Ariz. 25, 30 ¶ 16, 213 P.3d 174, 179 (2009).

¶**34**     The (F)(6) aggravator "is a single aggravating circumstance" that can be established in two ways, *State v. Lynch*, __ P.3d __, 2010 WL 2485248, at *11-12 ¶¶ 77, 84 (Ariz. June 22, 2010); the state may either prove beyond a reasonable doubt that the murder was especially cruel, which goes to the "mental anguish or physical pain suffered by the victim before death," or that it was committed in an especially "heinous or depraved" manner, which goes to the mental state and attitude of the defendant, *State v. Murdaugh*, 209 Ariz. 19, 31 ¶¶ 57, 59, 97 P.3d 844, 856 (2004). While the terms "heinous or depraved" are written in the disjunctive, they, in fact, constitute one prong.

15

*See Gretzler*, 135 Ariz. at 52-53, 659 P.2d at 11-12 (noting that a finding of any of the five *Gretzler* factors may establish the "heinous or depraved" prong). As discussed above, elimination of a witness to another crime constitutes heinousness or depravity, and thus establishes that prong of the (F)(6) aggravator. *See Speer*, 221 Ariz. at 464 ¶ 82, 212 P.3d at 802 (witness elimination is especially heinous or depraved); *Tucker*, 215 Ariz. at 312 ¶ 39, 160 P.3d at 191 (same); *Gillies*, 142 Ariz. at 570, 691 P.2d at 661 (same).

¶35    The trial court erred to the extent that it instructed the jury that heinousness and depravity are two distinct prongs of the (F)(6) aggravator. *See State v. Anderson*, 210 Ariz. 327, 354 ¶¶ 119, 121, 111 P.3d 369, 396 (2005) (referring to the (F)(6) prongs as "especially cruel" and "especially heinous/depraved" or "especially heinous or depraved"); *Murdaugh*, 209 Ariz. at 31 ¶ 59, 97 P.3d at 856 (stating that "[t]he term 'heinous or depraved' is used to describe the defendant's state of mind"); *cf. State v. Grell,* 212 Ariz. 516, 519 n.2 ¶ 8, 135 P.3d 696, 699 n.2 (2006) (noting that heinousness and depravity are often analyzed together). But given that there was sufficient evidence to prove the murder was committed to eliminate a witness to another crime, the murder

16

was thus "heinous or depraved" and no prejudice can be shown from the instruction.[8]

**3**

¶36      Womble also challenges the (F)(6) aggravator as facially vague and vague as applied. The Supreme Court has held that the especially heinous, cruel or depraved aggravating factor is facially vague. *Walton v. Arizona*, 497 U.S. 639, 654 (1990), *overruled on other grounds by Ring v. Arizona (Ring II)*, 536 U.S. 584 (2002). However, this Court's construction of the statute furnishes sufficient guidance to satisfy Eighth and Fourteenth Amendment concerns. *State v. Hampton*, 213 Ariz. 167, 176 ¶¶ 35-36, 140 P.3d 950, 959 (2006); *see also Tucker*, 215 Ariz. at 310 ¶ 28, 160 P.3d at 189. Therefore, Womble's argument on facial vagueness fails.

¶37      Womble additionally contends that the (F)(6) aggravator is vague as applied because of the "increased role of the jury in the sentencing process and the abandonment of proportionality review." We have previously rejected this argument. *See Hampton*, 213 Ariz. at 176 ¶ 36, 140 P.3d at 959

---

[8]   We likewise reject Womble's related argument that the verdict form for the (F)(6) aggravator improperly permitted the jury to reach a non-unanimous finding because the form did not specify that the jury make a separate finding of "especially heinous," or "especially depraved." The verdict form, which read, "The Defendant committed the offense in an especially heinous or depraved manner," correctly reflected the law.

17

(holding that "the (F)(6) aggravator may be constitutionally applied if given substance and specificity by jury instructions that follow this Court's constructions").

¶38    Womble further argues that even if the *Gretzler* factors are sufficiently described, it is impossible to determine which murders are "above the norm" without proportionality review.  We have also rejected this argument. *See State v. Andriano*, 215 Ariz. 497, 506 ¶ 43, 161 P.3d 540, 549 (2007); *see also Johnson*, 212 Ariz. at 431-32 ¶ 20, 133 P.3d at 741-42.

E

¶39    Womble next asserts the trial court erred in instructing the jury at the aggravation and penalty phases that he could eventually be released if given a life sentence.  He contends that a jury, believing he was parole eligible, may have considered him to be "a greater threat to society than a defendant who is not."  Because Womble did not object to the instruction, we review for fundamental error.  *Kiles*, 222 Ariz. at 30 ¶ 16, 213 P.3d at 179.

¶40    At the time of Mr. Soto's murder, Arizona law provided, in part, that if the defendant is not sentenced to natural life, "the defendant shall not be released on any basis until the completion of the service of twenty-five calendar years" if the victim was fifteen or more years of age.  A.R.S. §

13-703(A) (Supp. 2003). The statute makes clear that Womble's assertion that he would never be released is merely speculative. *See State v. Cruz*, 218 Ariz. 149, 160 ¶ 42, 181 P.3d 196, 207 (2008).[9]

**¶41** Although the trial court erred in using the term "parole" in the aggravation phase instructions, the final penalty phase instructions correctly used the term "release." As this Court noted in *Cruz*, *id.* at 160 ¶ 42, 181 P.3d at 207, and as § 13-703(A) reflects, Arizona law does not prohibit the release of a defendant given a life sentence once that defendant serves twenty-five years. *See* A.R.S. § 31-402(C)(4) (Supp. 2009).

### F

**¶42** Womble claims the trial court unconstitutionally interfered with his right to allocution. He argues that the court's "warnings" led him to believe that he should not present his full statement.

**¶43** At the beginning of the aggravation phase, the trial court advised Womble of his right to allocution and explained the State's right to rebut certain statements. Before the

---

[9] *See also* A.R.S. § 31-402(C)(4) (Supp. 2009) (providing for the Board of Executive Clemency to "receive petitions from individuals, organizations or the department [of Corrections] for review and commutation of sentences and pardoning of offenders in extraordinary cases and [] make recommendations to the governor" for offenses committed on or after January 1, 1994).

penalty phase, the court told Womble that if he decided to allocute, "there's nothing [the court] can do about it." The court suggested that Womble first present his statement to the court, which he did. The court noted that comments about his suicidal thoughts might open the door to evidence from the State's psychologist, which Womble's defense team had successfully kept from the jury. Following the court's suggestion, Womble offered a brief allocution but did not mention his suicidal thoughts.

¶44 Defendants have the right to allocute before sentencing. Ariz. R. Crim. P. 19.1(d)(7), 26.10(b)(1). However, that right is not absolute. *State v. Armstrong*, 218 Ariz. 451, 463 ¶ 58, 189 P.3d 378, 390 (2008). The State, in turn, "may present any evidence that demonstrates that the defendant should not be shown leniency." A.R.S. § 13-752(G).

¶45 The trial court did not deny Womble's right to allocute. The court's comments suggested that Womble would be ill-advised to read certain portions of his original statement, but he remained free to make whatever statement he wanted. Womble made a tactical decision not to include the first part of his statement to prevent the State from introducing testimony and reports from the State's psychologist. The court acted within its discretion when it advised Womble that the State might be permitted to present rebuttal evidence in response to

20

certain of his proposed statements. *See Armstrong*, 218 Ariz. at 463 ¶ 59, 189 P.3d at 390 (stating that when defendant chose not to express remorse in allocution to avoid state's rebuttal evidence, the trial court did not impermissibly limit defendant's right to allocate because defendant "remained free to express remorse, but he declined to do so").

**G**

¶46    Before trial, Womble stated his intent to present age as mitigation. *See* A.R.S. § 13-751(G)(5).  He turned nineteen approximately two weeks before the murder.  Citing *Roper v. Simmons*, 543 U.S. 551 (2005), Womble argued that he would present solely his "raw" age, rather than using it as a starting point for a discussion of his intelligence, maturity, and past experience.  In doing so, he contended that he would not be opening the door to rebuttal evidence.  Before the aggravation phase, the trial court ruled that if defense counsel mentioned Womble's age during the penalty phase, rebuttal evidence would be permitted.  Womble did not argue age as a reason for leniency.

¶47    Under § 13-751(C), the state may present any information that is relevant to any of the mitigating circumstances, regardless of its admissibility under the rules of evidence. *See State v. Pandeli*, 215 Ariz. 514, 527 ¶ 42, 161 P.3d 557, 570 (2007).  Deference is given to a trial court's

21

decision as to the relevance of evidence presented during the penalty phase. *State v. McGill*, 213 Ariz. 147, 156-57 ¶ 40, 140 P.3d 930, 939-40 (2006). However, the Due Process Clause of the Fourteenth Amendment limits the scope of rebuttal to the extent that trial courts should not admit even relevant evidence that is "unfairly prejudicial." *Pandeli*, 215 Ariz. at 527-28 ¶ 43, 161 P.3d at 570-71 (quoting *Hampton*, 213 Ariz. at 180 ¶ 51, 140 P.3d at 963).

¶**48** Age is a mitigating circumstance. A.R.S. § 13-751(G). However, in "assessing this mitigator, we consider . . . also '[a defendant's] level of intelligence, maturity, past experience, and level of participation in the killings.'" *State v. Velazquez*, 216 Ariz. 300, 314 ¶ 68, 166 P.3d 91, 105 (2007) (quoting *State v. Poyson*, 198 Ariz. 70, 80 ¶ 37, 7 P.3d 79, 89 (2000)). The court therefore did not abuse its discretion in ruling that the State would be permitted to use evidence of Womble's criminal history to rebut age as a mitigating circumstance.

¶**49** In any event, the jury was informed of Womble's age twice during the guilt phase. Under § 13-751(D), a jury may consider any evidence admitted during the guilt phase that is relevant to mitigation and this jury was so instructed. Thus, the jury had the opportunity to consider Womble's age in determining the appropriate sentence.

22

¶50     Because Womble committed the murder before August 1, 2002, this Court independently reviews aggravation, mitigation, and the propriety of the death sentence under A.R.S. § 13-755(A)-(C) (2010); *see* 2002 Ariz. Sess. Laws, ch. 1, § 7 (5th Spec. Sess.).  We "consider the quality and the strength, not simply the number, of aggravating and mitigating factors." *Kiles*, 222 Ariz. at 38 ¶ 62, 213 P.3d at 187 (quoting *Roque*, 213 Ariz. at 230 ¶ 166, 141 P.3d at 405).[10]

## A

¶51     Womble argues that the evidence was insufficient to support the jury's finding that he knowingly created a grave risk of death to the Sotos' son when he murdered Mr. Soto.  *See* A.R.S. § 13-751(F)(3).  To prove this aggravator, the State was required to establish the following three elements:  (1) the murderous act created a grave risk of death to the infant; (2) Womble knowingly created such a risk; and (3) there was a "real and substantial likelihood" that the infant would be killed. *Speer*, 221 Ariz. at 459 ¶ 52, 212 P.3d at 797 (quoting *Tucker*,

---

[10]     Womble argues that the evidence is insufficient to prove the "heinous or depraved" and "grave risk of death" aggravators. *See* A.R.S. § 13-751(F)(3), (6).  Sufficiency of the evidence claims are subsumed under the Court's independent review. *Andriano*, 215 Ariz. at 506 n.5 ¶ 41, 161 P.3d at 549 n.5. Womble concedes the sufficiency of the evidence supporting the (F)(7)(b) aggravator.  At the time of the murder, Womble was on probation for a felony conviction.

215 Ariz. at 309 ¶ 21, 160 P.3d at 188). Womble challenges the finding of the second element.

¶52     A person acts "knowingly" when, "with respect to conduct or to a circumstance described by a statute defining an offense . . . [the] person is aware or believes that the person's conduct is of that nature or that the circumstance exists." A.R.S. § 13-105(10)(b) (2010); *Speer*, 221 Ariz. at 459 ¶ 50, 212 P.3d at 797. At trial, the State cited Womble's statements that he checked the Sotos' place out a few times in advance, arguing that "[o]ne look at the Soto apartment tells you that they had children, from the twin beds in one bedroom, to the crib in the master bedroom, to the toys." The State, however, presented no evidence that Womble saw the inside of the apartment before the murder.

¶53     In addition, the State argued that Womble must have seen the baby because the sheets covering Mr. Soto's body were not pulled up. The State contended that if Womble could see the Sotos well enough to shoot them without missing, then he must have seen the baby. The State conceded, however, that no one knew how well-lit the apartment was at the time of the murder. A fire department engineer, one of the first to arrive at the murder scene, testified that "[i]t was still dark out" and that when he walked through the apartment he had to use a flashlight. He announced his presence in a loud tone, shook Mr. Soto a few

24

times, and then noticed that Mr. Soto "had his arm over . . . what looked to be a very, very young child." He removed Mr. Soto from the bed to begin resuscitation efforts, throughout which the child remained asleep.

¶54 Because it was dark in the apartment, the evidence shows only that Womble saw the outlines of Mr. and Mrs. Soto's bodies and likely did not notice their infant son. Womble also might have seen the crib next to the bed. The State did not prove beyond a reasonable doubt that Womble knew the baby was in the bed, and therefore, the evidence was insufficient to establish the (F)(3) aggravator. *See Speer*, 221 Ariz. at 460 ¶ 59, 212 P.3d at 798.

**B**

¶55 Womble contends that the evidence was insufficient to support the jury's finding that the murder was heinous or depraved. To the extent he bases his insufficiency of the evidence argument on the assertion that witness elimination standing alone cannot support the (F)(6) aggravator, we have rejected that argument above. *See supra* ¶¶ 27-32.

¶56 As Womble concedes, the evidence established beyond a reasonable doubt that the murder was committed to prevent Mr. Soto from testifying at Speer's burglary trial. Womble's telephone calls with Speer in the weeks leading up to the murder show that the motive for the murder was witness elimination. In

25

addition to the recorded jail calls, Speer mailed Womble a copy of the police report from the burglary, which included the Sotos' address. The evidence establishes the (F)(6) aggravator beyond a reasonable doubt.

C

¶57    On appeal, Womble offers as mitigation that he had just turned nineteen at the time of the murder; he worked and went to school; he was pressured and manipulated by his older brother Speer; he was suffering from untreated depression and the day before the murder made suicidal statements the first time he sought counseling; and he did not receive care.

¶58    "Age is of diminished significance in mitigation when the defendant is a major participant in the crime, especially when the defendant plans the crime in advance." *State v. Garza*, 216 Ariz. 56, 72 ¶ 82, 163 P.3d 1006, 1022 (2007). Whatever pressure Speer may have exerted over Womble is outweighed by the fact that Womble, despite his initial reluctance, actively participated in planning the murder weeks in advance, and he alone killed Mr. Soto while Speer remained in jail.

¶59    The record does establish that Womble sought counseling the day before the murder and even mentioned his plan to kill someone before killing himself. However, Womble chose not to introduce any additional mental health evidence. Although Womble's attempt to get help before the murder deserves

26

some consideration, the record does not support mental impairment such that it would call for leniency.

**¶60** Under A.R.S. § 13-755, we must independently reweigh the findings of aggravation and mitigation to determine the propriety of the death sentence. As we noted in *Speer*, "the factor of witness elimination is in itself especially weighty, as it involves a direct affront to the functioning of the justice system." 221 Ariz. at 465 ¶ 94, 212 P.3d at 803. Although we have stricken the (F)(3) aggravator, in light of the remaining (F)(2) and (F)(6) aggravators and the fact that Womble did not offer any additional mitigating evidence in the penalty phase, we conclude that the mitigating circumstances do not warrant leniency.

**IV**

**¶61** For the foregoing reasons, we affirm Womble's convictions and sentences.[11]

_____
Michael D. Ryan, Justice

CONCURRING:

_____

[11]  Womble also raised fourteen issues to avoid preclusion for federal review. These claims and relevant decisions presented by Womble are listed verbatim in the Appendix.

27

_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice

## Appendix

(1)  The death penalty is cruel and unusual under any circumstances and violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution. *State v. Harrod*, 200 Ariz. 309, 320, 26 P.3d 492, 503 (2001).

(2)  The death penalty is imposed arbitrarily and irrationally in Arizona in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution, as well as Brian's right to due process under the Fourteenth Amendment to the United States Constitution and Article 2, § 4 of the Arizona Constitution. *State v. Beaty*, 158 Ariz. 232, 762 P.2d 519 (1988).

(3)  Application of the death penalty on the facts of this case would constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 1, 4, and 15 of the Arizona Constitution.

(4)  The prosecutor's discretion to seek the death penalty has no standards and therefore violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 1, 4, and 15 of the Arizona Constitution. *State v. Sansing*, 200 Ariz. 347, 361, 26 P.3d 1118, 1132 (2001).

28

(5)  Aggravating factors under A.R.S. § 13-703(F) (renumbered as A.R.S. § 13-751(F), effective January 1, 2009) are elements of capital murder and must be alleged in an indictment and screened for probable cause.  Arizona's failure to require this violates a defendant's right to due process and a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 4 and 24 of the Arizona Constitution.  *McKaney v. Foreman*, 209 Ariz. 268, 100 P.3d 18 (2004).

(6)  Application of the death penalty statutes promulgated after *Ring v. Arizona*, 536 U.S. 584 (2002) (*Ring II*), violates the prohibition against *ex post facto* laws.  The changes altered the rules of evidence to permit different testimony than that required at the time of Brian's offense.  U.S. Const. Art. 1, § 10, Clause 1, Ariz. Const. Art. 2, § 25.  *State v. Ring*, 204 Ariz. 534, 65 P.3d 915 (2003) (*Ring III*).

(7)  The absence of proportionality review of death sentences by Arizona courts denies capital defendants due process of law and equal protection and amounts to cruel and unusual punishment in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution.  *State v. Gulbrandson*, 184 Ariz. 46, 906 P.2d 579 (1995).  Proportionality review serves to identify which cases are "above the norm" of first-degree murder thus narrowing the class of defendants who are eligible for the death penalty.

(8)  Arizona's capital sentencing scheme is unconstitutional because it does not require that the State prove that the death penalty is appropriate.  Failure to require this proof violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution.  *State v. Ring*, 200 Ariz. 267, 284, 25 P.3d 1139, 1156 (2001) (*Ring I*), *rev'd on other grounds by Ring II*.

(9)  A.R.S. § 13-703(renumbered as A.R.S. § 13-751, effective January 1, 2009) provides no objective standards to guide the sentencer in weighing the aggravating and mitigating circumstances and therefore violates the Eighth and Fourteenth Amendments of the United States Constitution and Article 2, § 15 of the Arizona Constitution.  *State v. Pandeli*, 200 Ariz. 365, 382, 26 P.3d 1136, 1153 (2001).

(10) Arizona's death penalty scheme is unconstitutional because it does not require the sentencer to find beyond a reasonable doubt that the aggravating circumstances outweigh the accumulated mitigating circumstances, in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, §§ 4 and 15 of the Arizona Constitution. *State v. Poyson*, 198 Ariz. 70, 83, 7 P.3d 79, 92 (2000).

(11) A.R.S. § 13-703 does not sufficiently channel the sentencer's discretion. Aggravating circumstances should narrow the class of persons eligible for the death penalty and reasonably justify the imposition of a harsher penalty. The broad scope of Arizona's aggravating factors encompasses nearly anyone involved in a murder, in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article 2, § 15 of the Arizona Constitution. *Pandeli*, 200 Ariz. at 382, 26 P.3d at 1153.

(12) Arizona's lethal injection statute and the protocol implementing that statute do not have any safeguards in place that were considered by the United States Supreme Court in *Baze v. Rees*, 553 U.S. __ (2008), to, at the least, make an attempt to insure an execution is humane. (*Baze* protocol incorporated several safeguards including minimum level of professional experience for individuals who inserted intravenous (IV) catheters, requirement for practice sessions, establishment of backup IV lines and other redundancies, and warden's presence in execution chamber that is not present in the Arizona protocol.) As it stands in Arizona, execution by lethal injection is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article 2, § 15 of the Arizona Constitution. Brian's counsel is aware this Court rejected this or a similar argument in *State v. Van Adams*, 194 Ariz. 408, 422 ¶ 55, 984 P.2d 16, 30 (1999). Brian nevertheless requests this Court revisit this issue.

(13) Arizona's death penalty unconstitutionally requires imposition of the death penalty whenever at least one aggravating circumstance and no mitigating circumstance exist, in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article 2, § 15 of

the Arizona Constitution. *State v. Miles*, 186 Ariz. 10, 19, 918 P.2d 1028, 1037 (1996).

(14) Counts 1-4 of the indictment allege the offenses in those counts were committed on May 25, 2002. (I. 1). Brian was born on May 15, 1983. (I. 5). At the time of the offenses, Brian was barely 19 years old. As the United States Supreme Court recognizes, "drawing the line at 18 is subject to the objections always raised against categorical rules." *Roper v. Simmons*, 543 U.S. 551, 554 (2005).

The *Roper* court recognized three differences between juveniles and adults that rendered "suspect any conclusion that a juvenile falls among the worst offenders" that the death penalty should be reserved for. 543 U.S. at 570. Summarily finding that a juvenile is no longer beset by those same differences simply because he has reached the age of 18 disregards "the concerns expressed in *Furman* that the penalty of death not be imposed in an arbitrary or capricious manner." *See Gregg v. Georgia*, 428 U.S. 153 (1976).

Because "the line at 18" is arbitrary and capricious, execution by lethal injection of 19 year old Brian is cruel and unusual punishment that is fundamentally unfair and a violation of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and of Article 2, §§ 4, 15, and 24 of the Arizona Constitution.